Hitchcock, J.
The facts in this case show that the defendant, Anna Parker, has the oldest mortgage upon the premises.in controversy, that mortgage bearing date July 18, 1840, but it was-not recorded until the 11th day of November following. Before this time, to wit, on the 30th day of October of the same year, the complainant had procured a mortgage of the same premises, which was entered for record on the day of its date.
Now, there can be no doubt that, under these circumstances, at law, the mortgage of the complainant is the preferable lien upon this land. Section 7 of the act expressly declares that mortgages “ shall take effect from, the time when they are recorded ; and if two-mortgages are presented for record on the same day, they shall take effect from the order of presentation' for record; the first presented, shall be the first recorded.” And if they take effect from such time, they surely could have *had no effect be *432 fore. It is, claimed, however, that before recording- a mortgage, although in form a.legal mortgage, it ‘Hakes, effect”- as an equitable- mortgage, and that a subsequent mortgage, with notice- of this previous mortgage, w-ill be> postponed in equity. This question was before the. court at the last term,-in the.-case of Stansel v. Roberts et al., 13 Ohio, 148, and it was decided that the lien of a second mortgage, first recorded, is preferred; that notice of a prior unrecorded mortgage will not, under the Ohio statute, postpone the second mortgage, and that it does not make any difference that the first mortgage was given to secure money borrowed to pay for the land.
I am aware that this construction of the statute is not entirely satisfactory to the profession, as the law thus construed interferes with previous received opinions of equity principles, as applicable to the subject. But it is not perceived how a different construction would have been put upon the statute, by any rule of construction known in law. Mortgages “shall take effect from the time they are recorded,” or, according to a subsequent statute, from the time when entered or delivered for record. There is no ambiguity, no uncertainty, in the phraseology. It is plain and explicit. Not that it shall take effect at law, but that it shall take effect from that time. It is the delivery of the instrument to the proper officer, or at the proper office, for registry, that gives it vitality. There is no more impropriety in this legislation than there is in saying that a deed for the conveyance of land, although -otherwise executed according to the forms of the law, shall not operate even as between the parties as a conveyance, until acknowledged before competent authority; yet such is our law; and it is held that such deed can, until acknowledged, be treated in no other manner- than as contracts to convey.
The opinion that it was the intention of the legislature that a mortgage should be rendered in order to give it vitality, is, as it -seems to the court, perfectly apparent, from an examination of the different laws providing for the execution and acknowledgment *of deeds. Section 4 of the act of January 30, 1818 (Chase -Stat. 1041), “to provide for the proof and acknowledgment of deeds and other instruments of writing,”'provides, “ that all deeds, mortgages, and other instruments of writing, executed agreeably to the first and second sections of this act, shall be rendered within six months from the date of the same, within the sounty *433 ■wherein such lands, tenements, and hereditaments are situate; and all deeds, mortgages, and other instruments of writing, executed agreeably to the third section of this act, shall be recorded within six months from the date of the same, within the county wherein such lands, tenements, and hereditaments shall lie; and all such deeds, mortgages, and other instruments of writing, executed, acknowledged or proved, and recorded as aforesaid, shall be good, and valid in law; and if any deed, mortgage, or other instrument of writing, as aforesaid, shall not be recorded within the time limited as aforesaid, such deed, mortgage, or other instrument of writing shall bo considered fraudulent against any subsequent bona fide purchaser or purchasers, without knowledge of the existence of such conveyance; provided, that such conveyance may be recorded after the expiration of the time herein re quired, and shall, from the date of the record, be notice to any subsequent purchaser or purchasers.”
The first and second sections of this act relate to deeds executed within, the third to deeds executed without, the statev Previous to this act, one year was allowed for recording deeds of the latter description.
By this section it will be seen that unrecorded deeds, mortgages, and other instruments were good as against subsequent grantees with notice.
This act was repealed by an act’of the same title, passed February 24, 1820. Section 4 of this act, however, is substantially, if not identically, the same with section 7 of the act of 1818 (Chase’s Stat. 1149); and it will be observed that, as to recording, and the effect thereof, mortgages are placed precisely on the same footing with other deeds of conveyance.
*The last-named act was repealed by the act of 1831, the law now in /oree. By this latter law a difference is made between mortgages and other deeds of conveyance. Section 7 provides “that all mortgages, executed agreeably to the provisions of this act, shall be recorded in the office of the recorder in the county in which such mortgaged premises are situaited, and shall take effect from the time when the same are recorded; and if the two or more mortgages are presented for rocord on the same day, the first presented shall be first recorded, and the first recorded shall have preference.”
Then follows, in section 7, “ that all other deeds and instruments *434 of writing, for the conveyance or incumbrance of any lands, tenements, or hereditaments, executed agreeably to the foregoing provisions, shall be so recorded within six months from the date thereof; and if such deed or other instrument of writing shall not be recorded within the time heroin prescribed, the same shall be deemed fraudulent, so far as relates to any subsequent bona fide purchaser, having, at the time of making such purchase, no knowledge of the existence of such former deed or instrument of writing, and may be recorded after the expiration of the time herein prescribed ; and from the date of such record shall be notice to any subsequent purchaser.”
It will be seen that, by this last legislation, mortgages and other instruments of writing, which before had been provided for in section' 1, are separated. Deeds of conveyance, other than mortgages, may be recorded within six months ; but the principle is retained, that although not recorded, yet a subsequent purchaser, with notice, can not defeat the title of the grantee. The same principle had prevailed with respect to mortgages until this time. But by this law no time is specified within which they shall be recorded; that is at the election of the mortgagee. It is prescribed, however, that they shall take effect of the time of recording. What means all this? Was it done without design, through mere carelessness or want of attention ? It is evident that a change in the law was ^intended. It was thought that there was some mischief in the previous law, and the object was to supply a remedy, and that mischief was, as we must suppose, from the course of legislation, that a man might take a mortgage of his neighbor’s property, and keep it concealed for six months, thereby enabling that neighbor to contract further debts, which he would be unable to pay, and thereby defraud the community around him. To remedy evils of this character, the law-making power thought it good policy to provide that this species of conveyance should only take effect from the time of recording — from the time that notice was given of the incumbranch upon the public records of the county. Whether the policy was sound or not, is not for us to say. It is sufficient for us to know that such is the policy. But we, in fact, believe that the policy is good, and if persevered in, will tend to prevent, and actually will prevent frauds. We have no doubt that, under this construction, frauds may be practiced, and hard cases arise. The ease before tl e court *435 is a liarcl one. Anna Parker sold her land, and took a mortgage to secure the purchase money; she neglected to place this mortgage upon record. She may in consequence lose the debt, but it will not do to bend the law to prevent its operation against her.
Bat, as between ordinary mortgages, I can not perceive how this construction can operate improperly. I know it is said that a subsequent mortgagee, with notice, defrauds the prior mortgagee by putting his mortgage first upon record. In one sense of the word perhaps he does, but there is no actual fraud. Take an instance: A. and B. are creditors of C.; the debts are equal, and either is sufficient to sweep away the entire property of the debtor; A. seeks his opportunity, and for the security of his debt procures a mortgage upon the entire property of C.; when he does it, he knows of the debt of B., and knows further that his mortgage will entirely defeat the collection of that debt. Now, in the common acceptation of the term, and according to the ideas of the profession, here is no fraud. True, B. is deprived of the collection of his debt, but *thero is no fraud. A. is the vigilant creditor ; he only took the mortgage to secure what was honestly his due. But change the case: A., after having procured his mortgage,becomes negligent; he does not place it upon record ; B., knowing the existence of that mortgage, but equally anxious to secure bis debt, procures a mortgage, and places it upon record. All cry out, here is a fraud. Now, my perceptions are so obtuse that I can perceive no difference, in a moral point of view, in the actions of these two men. They are both creditors, and both equally anxious to secure their debts. They pursue the course pointed out by law to effect their object. The one is the most vigilant to get his mortgage executed; the other to get his recorded. The course of neither is in accordance with the principles of abstract justice. Such justice would require that, inasmuch as the property was not sufficient to pay both, it should bo equally divided between them.
It is attempted, in this case, to set up the vendor’s lien for the protection of Mrs. Parker. This can be done only where it appears that the vendor relied upon this lien as security for the payment of the purchase money. In this case, a note, with personal security, was given for the purchase money in the first instance, and subsequently a mortgage.
It is urged by counsel, that although, as between mortgages, the *436 first recorded mortgage must prevail, yet that an unrecorded mortgage, being in equity a specific lien, must prevail as against a prior judgment lien, which is general. If we are right in t.h® construction of the statute, if a mortgage does not take effect until recorded — in other words, if the recording is part and parcel of the execution — it is difficult to see how this position can be sustained. If, as we suppose, the leading motive of the legislature, in the enactment of the law, was to have incumbrance upon land placed upon the record of the county, to adopt the principle insisted upon, would be to defeat that intention. The case of Lake v. Doud, 10 Ohio, 415, is cited in support of the position assumed by defendants’ counsel. In that case, there was no judgment lien.
The ^judgment had been rendered in a county different from the one in which the land in controversy was situuted. But execution had been levied upon the land in controversy, and it had been sold. The purchaser did not set up any claim against the mortgage. The great question in the case was a question of fraud, and the court found, not that there was constructive fraud, but that an actual and aggravated fraud had been attempted upon the rights of the complainants. The question was made by defendants, whether the deed of the complainant would be enforced, not being a legal mortgage; and the court held that it could, and cited as authority the case of the Bank of Muskingum v. Carpenter, 7 Ohio, 21. The case in 7 Ohio was undoubtedly correctly decided, but the mortgage in controversy, in that case, was executed long before the act of 1831.
In the case of Lake v. Loud, this latter act was scarcely taken into consideration by the court; the great, the leading question, as before stated, being the question of fraud.
The case of Magee v. Bell, Adm’r of Beatty, 8 Ohio, 396, was one in which the question as to priority of lien was raised. The plaintiff was a judgment creditor of Thos. T. Beatty; the intestate was a creditor whose debt was secured by mortgage. The mortgage was delivered for record, before the first day of the term, when the judgment was entered, but was not copied into the record until afterward. When the case was first under consideration, the question was, whether the mortgage should take effect from the time of its delivery for record, or from the time it was actually copied into the record. If, from the time of delivery lor record, the mortgage in the case then before the court was to *437 bo preferred to the judgment. If from the time it was actually copied into the record, then the lien of the judgment was the preferable lien. Upon this question, the court divided in opinion, and this division of opinion induced the legislature to pass the declaratory act of March, 1838. In that case, it was evident that the court considered that the lion of a judgment must be preferred to any lien of an unrecorded mortgage.
*Upon the whole, the court are of opinion that the judgment of Kagler is the preferable lien upon the 100 acres of land, and that the mortgage of the complainant must be preferred to that of Anna Parker. As we suppose the case was reserved for the purpose of settling this point, we shall not now enter a final decree, nor order a sale of the mortgaged premises ; but the case will bo referred to a master, to ascertain the amount due upon the respective liens, with instructions to report at the next term of t.he court in Clermont county.
In making this inquiry, the master will examine the complainant on oath, touching the consideration of'the debt secured by his mortgage. In the answer of Anna Parker, she charges that much of the consideration of this note is exorbitant interest, such exorbitant interest being compounded ; and she calls upon complainant, by interrogatories, to answer this charge. This he refuses to do; and he says, under the advice of counsel, that he is not obliged to do it. We differ from counsel on this point; the interrogatories must be answered, or what will result in the same, thing, the complainant must answer on oath before the master.