**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Anthony KROSLACK, Jr.,
Defendant-Appellant.**

**No. 17759.**

United States Court of Appeals,
Seventh Circuit.

May 15, 1970.

As Amended May 25, 1970.

Gerald M. Werksman, Chicago, Ill., Elliot M. Samuels, Chicago, Ill., of counsel, for appellant.

Alfred W. Moellering, U. S. Atty., Richard L. Keiser, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before SWYGERT, Chief Judge, KILEY, Circuit Judge, and GORDON, District Judge.*

KILEY, Circuit Judge.

This is an appeal from defendant's conviction for bank robbery in violation of 18 U.S.C. § 2113(d). Defendant contends that the evidence is insufficient to support the verdict, and that the district court's rulings with respect to testimony of his interviews with an FBI agent violated his Fifth Amendment rights. We reverse on the latter contention, and remand for a new trial.

The Calumet Federal Savings and Loan Association of Hammond, Indiana, was robbed on October 3, 1968. Defendant was arrested as the driver of the robbery getaway car. The evidence against him is thin, but we think it is sufficient to take the case to the jury. Taken in the light most favorable to the government, the evidence shows that prior to the robbery co-defendant Franiak and Miss Kovach went to the Jefferson Hotel (next door to the Calumet office) to meet the defendant. Franiak proceeded to get into a Pontiac convertible, with defendant who was driving, and another male. This automobile closely resembled the getaway car, seen waiting outside the Calumet office at

---

* District Judge from the Eastern District of Wisconsin, sitting by designation.

the time of the robbery. A month after the event defendant made a statement to Donald Forsythe, who was a government witness, implying defendant's participation in the robbery as driver of the getaway car. We think the district court did not err in denying defendant's motion for acquittal at the close of the government's case.

FBI agent Whitaker interviewed the defendant on three different occasions. At the trial he testified that on October 7, 1968, four days after the robbery, he interviewed defendant at the Gary office of the FBI. Defendant was not under arrest at the time, and was properly informed of his right to counsel and to remain silent. During the conversation the defendant denied knowing Messrs. Franiak and Vickerman, who were co-defendants with him in the trial.

Agent Whitaker further testified that he had a second conversation with defendant on October 24, 1968 at defendant's sister's residence in Hammond. A request was made by defendant's counsel for a hearing out of the presence of the jury on the voluntariness of the statement. This was denied, and the testimony proceeded as follows:

> Agent: I had a form there we utilized to advise criminal suspects, and I read this form to him, asked him if he understood it, and he asked me to get him an attorney, and I told him that since he wasn't under arrest, I was not able to obtain an attorney for him.

> He said he didn't have anything to say and I left.

After a motion for mistrial was made, the trial court struck this testimony from the record, informing the jury that the fact that a person "refuses to discuss a matter with a Government agent is no evidence of any kind."

The questioning of agent Whitaker proceeded. He testified to a third con-

versation, held on November 8, 1969, when he placed the defendant under arrest and informed the defendant of his rights:

> Q. Did Mr. Kroslack acknowledge that he understood you?

> Mr. James (counsel for defendant): I don't like to bore the jury, your honor, but I say we are sailing into troubled waters again.

> The Court: What if anything did Mr. Kroslack say to you in response to your advice?

> Agent: Basically, the same answer that was stricken from the record.

A second motion for mistrial was denied, and no cautionary instruction was given to the jury.[1]

■ We hold that the admission of the testimony of agent Whitaker as to the latter two conversations occurring on October 24 and November 8 violated defendant's Fifth Amendment right against self-incrimination and so prejudiced the defendant that a new trial is required. It was reversible error for the agent to testify that when the defendant was questioned he refused to make a statement. Baker v. United States, 5 Cir., 357 F.2d 11 (1966). Defendant had a constitutional right to refuse to make a statement until his request that a lawyer be present was met. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1964). We find little difference between the prejudice resulting from the testimony admitted in the case before us, and a prosecutor's comment before a jury on a defendant's exercise of his constitutional right not to take the witness stand. Such comments have been held to be reversible error. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The testimony elicited here could well have led the jury to infer guilt from defendant's refusal to make

---

1. The government says in its brief that no instruction was given on this testimony because the conversation between the court and witness was not audible to the jury.

the statement.[2] We think exercise of a constitutional privilege should not incur this penalty. *Id.* at 614, 85 S.Ct. 1229.

The government argues that no reversible error was committed because the trial court promptly struck the "offending testimony" and thereafter instructed the jury to disregard it. Further, they note that the testimony elicited was inadvertent rather than intentional, as witness Whitaker simply was confused. They rely on this circuit's decision in United States v. Becera-Soto, 7 Cir., 387 F.2d 792 (1967), cert. denied 391 U.S. 928, 88 S.Ct. 1819, 20 L.Ed.2d 669, where the court held that the improper admission of a post-arrest statement given to a government agent was not reversible error where there was present other clear evidence of defendant's guilt together with the prompt action of the trial court in striking the testimony and directing the jury to disregard it. Here, however, no cautionary instruction was given when agent Whitaker discussed the defendant's silence on a second occasion. And the violation of defendant's constitutional right is of greater significance in view of the thinness of the evidence against him in this record. See Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Because we are remanding the case for a new trial, we shall consider the issue of the voluntariness of the alleged statement of October 7 which the defendant gave to agent Whitaker. Defendant made a motion at trial for a voir dire examination as to the voluntariness of this statement, which was denied. He claims before us that the statement should not have been admitted without such a hearing.[3] In the October 7 statement the defendant denied knowing co-defendants Franiak and Vickerman. The government however offered testimony that defendant was seen with Franiak and later conversed with him. The failure to conduct a voir dire examination placed defendant in the dilemma of leaving the government's damaging testimony uncontroverted or waiving his privilege not to testify in order to controvert the testimony. In other words, he could controvert the testimony only at the price of waiving the exercise of his constitutional right to remain silent. A voir dire hearing was consequently of great importance to defendant, and if the court should find the October 7 statement involuntary the dilemma would be ipso facto obviated. Defendant relies upon Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), involving an incriminatory statement, in challenging the court's denial of his request for the hearing. We think the ruling here was erroneous even though the statement was exculpatory since the statement in view of the government's testimony was highly prejudicial. United States v. Johnson, 7 Cir., 409 F.2d 861 (1969).

The government urges that the rule in Jackson v. Denno should not apply since the conversation with agent Whitaker was not in-custody interrogation and defendant was not under arrest at the time of the October 7 conversation. The determination of where the statement was made and under what circumstances it was given are facts to be considered by the trial court in deciding the voluntariness of the statement itself.

At a new trial, the district court must conduct a preliminary hearing out of the presence of the jury on the issue of the voluntariness of the October 7 statement.

---

2. The Fifth Circuit has stated:
   We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt. Walker v. United States, 404 F.2d 900 (1968).

3. Defendant argues in his brief that all three conversations which he had with the agent required a hearing out of the presence of the jury as to their voluntariness. Since we have held the latter two conversations inadmissible, we need only consider the issue of voluntariness as to the October 7 statement.

Kroslack was represented in this court by Attorney Gerald M. Werksman of the Chicago Bar. The court expresses its appreciation to Mr. Werksman for his dedicated services as court-appointed counsel.

Reversed and remanded for a new trial.