UNITED STATES of America, Appellee,

v.

Russell Eugene BRIDDLE, John Russell Brown, William Edward Mourey, Appellants.

No. 20274.

United States Court of Appeals, Eighth Circuit.

June 3, 1971.

Rehearing En Banc Denied and Rehearing Denied June 25, 1971.

States Post Office at Fort Madison, Iowa, in violation of 18 U.S.C. § 371 (Count I); of forcibly breaking into that post office with intent to commit larceny therein, in violation of 18 U.S.C. § 2115 (Count II); and of willfully damaging property of the United States there in excess of $100 in value, in violation of 18 U.S.C. § 1361 (Count III). The federal district court, Chief Judge Stephenson, sentenced each defendant to maximum terms of five years on Count I, five years on Count II, and ten years on Count III, providing, however, that the sentences on Counts II and III would run concurrently, for a total of fifteen years imprisonment. The defendants appeal, claiming insufficiency of the evidence, errors committed by the trial court in admitting evidence and instructing the jury, and abuse of discretion by the trial court in denying the defendants' request for a continuance. After carefully reviewing the record, we affirm the convictions.

The record of the proceedings, including the transcripts of the trial and hearings on pretrial motions, discloses that postal authorities learned through four informants, described as reliable, that Briddle, Brown and Mourey planned a major burglary for the weekend of Thanksgiving, November 27, 1969. Commencing about November 16, postal authorities, assisted by other law enforcement officers, conducted extensive surveillance of each defendant. The three defendants were observed meeting together before noon, November 26, at Brown's residence. That afternoon, Brown drove to Kansas City, Missouri, where he purchased welding and cutting equipment, including a striker, used to ignite the cutting torch, which bore the marking "Hohenschield Welding Supply." Similar equipment of the same brand, including a striker with the same marking, was found at the scene of the Fort Madison post office burglary. Hohenschield Welding Supply Company is a local Kansas City firm which sells weld-

Murry L. Randall, St. Louis, Mo., for appellants.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, John B. Grier, Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Before CLARK, Associate Justice,* MATTHES, Chief Judge, and BRIGHT, Circuit Judge.

BRIGHT, Circuit Judge.

Appellants Russell Eugene Briddle, John Russell Brown and William Edward Mourey were convicted by a jury of conspiring to break into the United

* Associate Justice Retired, United States Supreme Court, sitting by designation.

ing supplies within a hundred-mile radius of Kansas City. The other equipment was of a brand sold nationwide. After purchasing the equipment, Brown transported it in the trunk of his car back to St. Louis, where he stopped in the driveway of Mourey's residence.

At about 10:00 a. m. the next day, November 27, Briddle visited Brown's residence. Later, Briddle purchased six pairs of brown cotton gloves, one metal cold chisel and a punch at a nearby Arlan's department store. At the store checkout counter, he dropped a note which read: "Service Car. Pick up chisel and punch and gloves at Arlan's on the way. License plate, nuts and bolts." A cold chisel and a punch found at the scene of of the burglary were similar to tools available at the Arlan's store, even to the extent of markings left by plastic tape used to attach the tools to display cards for retail sale. Later in the afternoon, Brown and Briddle left Brown's residence in a 1965 lavender-colored Chevrolet bearing no license plates. They had the car serviced at a Standard Oil station in St. Louis and then drove the car to Mourey's residence. At this time, the automobile displayed a Kansas license plate, number WY27175, which had been stolen earlier in the week from a used car lot in Kansas City.

The three defendants were then observed driving north on U.S. Highway 61 out of the St. Louis area, Briddle and Brown in the 1965 Chevrolet followed by Mourey in a 1965 Buick. At Bowling Green, Missouri, and again at Hannibal, Missouri, the drivers drove around in different directions upon the streets in an apparent attempt to confuse followers. Mourey parked the Buick automobile in a residential area of Hannibal and apparently joined Briddle and Brown in the Chevrolet. The Chevrolet was seen about 6:45 p. m., November 27, going north out of Hannibal on Highway 61, which leads to Fort Madison, Iowa. That night, a Fort Madison police officer observed a 1965 Chevrolet, described as silverish-colored, bearing a Kansas license plate with a "WY" prefix and a trailer hitch similar to the one on the defendants' Chevrolet. Sometime between 10:30 p. m. that night and 2:00 a. m. the next morning, unseen persons broken through the front doors of the Fort Madison post office, cut their way into the main vault and took stamps, cash and other items, valued at approximately $65,000.

Postal inspectors continued surveillance on the Buick automobile left in Hannibal by the defendants on November 27. Mourey returned to the vehicle on foot the next afternoon. A short time later, Briddle drove up in the 1965 Chevrolet. Mourey, who apparently could not start the Buick, jumped into the Chevrolet with Briddle. At this time, postal inspectors, on foot and in vehicles, stopped the Chevrolet and arrested Briddle and Mourey. Officers apprehended Brown later. Immediately following the arrest of Briddle and Mourey, the officers searched the Chevrolet automobile. From the trunk, they seized several weapons, a laundry bag containing $345.59 in currency, ski masks and cotton gloves of the same type as those purchased by Briddle the day before. The currency included a dime with a green discoloration on one side. A postal clerk identified this dime as being similar in appearance to one he had placed in a cash drawer at the post office two or three days before the burglary. At the scene of the burglary, investigators found a distinctive leather button top, which matched the buttons and the bottom part of a particular button, on a leather coat taken from Briddle immediately following his arrest.

We now consider the several contentions made by appellants on this appeal.

## SUFFICIENCY OF THE EVIDENCE

Appellants claim that the evidence is insufficient to link them with entry and burglary of the post office in question. We think that, although circumstantial in nature, the evidence, taken cumulatively, establishes a strong link connecting the defendants to the Fort Madison

post office burglary. As noted above, several items found at the scene of the burglary were of the same type as those purchased earlier by the defendants. These items included gloves, a cold chisel, a punch, and welding and cutting equipment, including a "Hohenschield Welding Supply" striker. The defendants, at the time of their arrest, possessed a dime which was discolored similar to one previously seen in the post office. A unique button top, found in the postal inspector's office, which is not frequented by postal patrons, was shown to have come from the coat worn by Briddle. The Fort Madison police officer's observation of a 1965 Chevrolet, appearing similar to the defendants' Chevrolet, the night of the burglary, also links the defendants to the vicinity of the crime. The officer's characterization of the car color as silver does not negate the inference that the 1965 Chevrolet was present in Fort Madison the night of the burglary.

The evidence affords more than adequate grounds to sustain the jury's verdict and the trial court's denial of defendants' motions for an acquittal. In support of their contention, appellants cite United States v. Jones, 418 F.2d 818 (8th Cir. 1969). In that case, this court specifically noted that except for the defendant's possession of recently stolen money, "no fact or circumstance proves that defendant participated in the actual robbery or acted as an accessory * * *." *Id.* at 827. The facts and circumstances in the instant case are clearly different.

### INSTRUCTION: PROPERTY OF THE UNITED STATES

■ Appellants contend that the trial court, in an instruction, improperly removed an essential element of one of the offenses from the jury's determination —that "property of the United States" be damaged. The offense is set forth in 18 U.S.C. § 1361, which, in part, states:

Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, * * * shall be punished as follows:

If the damage to such property exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both * * *.

The government occupied the Fort Madison post office building as a lessee under a written lease which was admitted into evidence. During the trial, the defendants argued that only property of the lessor, not of the United States, sustained damage. The trial court advised counsel that it would construe the lease, and subsequently, it instructed the jury as follows:

One of the propositions the Government must establish beyond a reasonable doubt is that the defendants did injure property of the United States, that is, an aluminum door and a walk-in vault located in a building used as a Post Office of the United States, thereby causing damage in excess of $100.00. In this connection you are instructed that the United States had a leasehold interest in the building which it occupied as a Post Office. Therefore, both the building and the vault were property of the United States.

Since the construction of the lease constituted an issue of law for the court, we think the trial court properly instructed the jury. See Magnolia Motor & Logging Company v. United States, 264 F.2d 950, 952–953 (9th Cir.), cert. denied, 361 U.S. 815, 80 S.Ct. 54, 4 L. Ed.2d 61 (1959); Nick v. United States, 122 F.2d 660, 673 (8th Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 302, 86 L. Ed. 550 (1941). The building and fixtures therein fell within the purview of the statute as property of the United States. This conclusion follows from a legal construction of the lease and did not remove any essential element of the offense from the jury, as is charged by appellants. To convict the defendants, the jury needed to find (a) damage in

excess of $100, and (b) willful commitment of such damage. Not specially instructing the jury in regard to the effect of the lease would have only served to confuse the real issues. See United States v. Salliey, 360 F.2d 699, 702–703 (4th Cir. 1966).

## EVIDENTIARY MATTERS

Appellants Briddle and Mourey claim that the trial court erred in admitting testimony that they, in response to *Miranda* warnings given after their arrest, stated they would make no statement. The prosecution presented this testimony prior to asking the witness, a postal inspector, about a statement made by defendant Briddle at a later date. In that statement, Briddle admitted ownership of the 1965 lavender-colored Chevrolet.

Appellants attempt to equate the witness's testimony that "they [the defendants] knew their rights and they didn't want to make any statement whatsoever" with a prosecutor's comment upon a defendant's failure to testify, a practice prohibited by the Fifth Amendment. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961). Appellants rely upon United States v. Kroslack, 426 F.2d 1129 (7th Cir. 1970), which held it "reversible error for the agent to testify that when the defendant was questioned he refused to make a statement." *Id.* at 1130. We think the *Kroslack* rule should not be applied where, as here, further testimony shows that a defendant later made a statement. We note, also, that the trial court, in the jury's presence, aptly commented that "[t]hey have a right not to make a statement." We conclude that under these circumstances the testimony served a relevant purpose. See United States v. Arnold, 425 F.2d 204, 206 (10th Cir. 1970). No error flows from its admission. See Jacobs v. United States, 395 F.2d 469 (8th Cir. 1968).

Appellants also urge error in the admission of testimony of this same postal inspector that upon learning of the Fort Madison burglary, he inquired, in a telephone conversation with a superior, as to whether "the modus operandi resembled those throughout the United States—which we had under investigation." Since the witness testified only to inquiries, and not to answers, his testimony neither directly nor indirectly implied, as here contended by appellants, that the defendants had committed other burglaries. Accordingly, we reject this claim.

We next turn to appellants' objection to the admission into evidence of the button top found at the scene of the burglary. Appellants claim that since the prosecution failed to trace custody of the button top in question, exhibit 2-V, from the Fort Madison post office to the courtroom, its admission was improper. The government concedes its failure to prove the chain of custody.

Since the admission of the exhibit furnished strong evidence of the defendants' guilt, we have carefully reviewed all evidence bearing upon the exhibit's identification. Sergeant Bartholomew, the Fort Madison police officer who found the button top, described his find as follows:

> what I thought was a button. It had a picture of a whale on the front of it. It was leather * * *. And it had a sticky substance on the back, as though it might have been stuck to something. * * * [I]t was a dark brown in color. Had a whale or a fish on it. The tail was up in the air. Split. And I believe it was the left eye of the animal that was up.

He identified exhibit 2-V as "the item which I found." With this identification, the trial court received the exhibit into evidence over no objection by the defendants. Another Fort Madison police officer received the button top from Sergeant Bartholomew at about 3:00 a.m. the morning of November 28 and left

it on a bench in the main working area of the post office. The officer, in his testimony, described exhibit 2-V as "the button, or button just exactly like the one Sergeant Bartholomew gave me."

A chemist microanalyst, who testified as an expert witness for the prosecution, stated that he received exhibit 2-V, as well as Briddle's coat, exhibit 2-G, from Postal Inspector Gene Wensman. The expert observed that both the button top and the bottom part of a leather button remaining on the right sleeve of Briddle's coat "still contained a sticky or gummy material, showing there was a recent removal from one portion of the other." He testified, "In other words, the button was recently torn apart." Noting that the top half of a button on the other sleeve had also been removed, he stated that "the top half of this button has been off for some time because it is soiled, * * * no longer sticky, and the edges are somewhat rounded, showing wear over a period of time."

Given the uniqueness of the buttons on Briddle's coat, we think this identification evidence established that exhibit 2-V was the button top found at the scene of the burglary. Accordingly, we conclude that the trial court properly rejected appellants' request to strike the exhibit from evidence. See West v. United States, 359 F.2d 50 (8th Cir.), cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966).

Appellants also raise objections relating to the testimony of prosecution witness Robert Ranger. This witness testified to certain alleged statements made by defendant Brown while incarcerated at the Polk County, Iowa, jail awaiting trial on the present charges. Appellants contend the following: (1) the admission of testimony from Ranger produced error since the government, in violation of Rule 16, Fed.R.Crim.P., failed to disclose before trial that it possessed an affidavit of Ranger containing allegedly incriminating statements made by Brown; (2) the trial court erred in refusing to grant Brown and Mourey a severance upon Ranger's taking the stand since Ranger's testimony implicated Brown and Mourey; and (3) the trial court erred in restricting the scope of cross-examination of witness Ranger. We consider each of these contentions.

We note that the government, in response to a pretrial motion, stated that it had "no written or recorded statements or confessions made by these defendants * * *." When the prosecution called Ranger near the end of the trial, it furnished the court and defense counsel with a copy of Ranger's affidavit, which the court made a part of the case as a court exhibit. This affidavit contained statements which linked Brown and his co-defendants to the Fort Madison post office burglary. The trial court, indicating concern for the *Bruton* rule [1], directed that Ranger first be fully interrogated and cross-examined outside the presence of the jury. After hearing the testimony, the court restricted direct examination as follows:

I will restrict the United States Attorney to inquiring of this witness the very first part of * * * [his] testimony, that he was in the cell with Mr. Brown, and Mr. Brown said he participated in the Fort Madison burglary, and that they didn't have anything on him. He can mention these things, and that's it. Although he didn't name the associates, if the United States Attorney starts digging into the lavender car and the Buick car and the ski masks, you are tying

[1]. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which stresses the "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt" and "powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant." 391 U.S. at 126, 135–136, 88 S.Ct. at 1628. See Slawek v. United States, 413 F.2d 957 (8th Cir. 1969). For an excellent discussion, see generally Singer, Admissibility of Confession of Codefendant, 60 J.Crim.L.C. & P.S. 195 (1969).

in other defendants. And as I read the spirit of the Bruten (sic) case, this is not permissible.

Likewise, the court advised defense counsel that

I'll allow you full cross examination, but I'm not going to allow you to ask him the type of car that was used, the Riviera and the lavender-colored car. * * * I have to protect the other defendants in this case. * * * [T]he restriction I'm placing on his testimony is very, very helpful to Mr. Brown, because all of the things in this affidavit, the description of the Buick car and the lavender-colored car, and the Kansas plates, and the ski masks, and the things that were obtained in the trunk of the car, are consistent with all the other testimony in this case, and would just further convict Mr. Brown, as you well know.

Finally, the court cautioned that "if counsel for the defendants intentionally create error themselves, that's too bad."

With these restrictions, witness Ranger testified on direct examination only as to a part of Brown's admissions, those in which Brown allegedly said he did not feel he would have any difficulty "beating" the charges "[b]ecause all the government had for evidence was a tank and some tools he rented in Kansas City, that were found in the Post Office", "[t]hat he didn't believe the government could prove that he rented these * * *." Ranger also testified that Brown, looking at a recently-received air mail letter containing approximately thirty six-cent stamps, said " * * * this is my share of the loot. If the government wants that, they can have it." The defense counsel limited its cross-examination to impeaching the credibility of this witness by showing his prior convictions and that he had undergone observation at a mental hospital.

The government seeks to justify its failure to disclose Ranger's affidavit before trial on the basis that Ranger had been beaten by Brown and others while incarcerated. The trial court ruled that the Ranger affidavit did not contain a recorded statement of defendant Brown within the ambit of Rule 16(a), Fed.R. Crim.P., which governs pretrial inspection of a defendant's written or recorded statements or confessions. The rule does not give a defendant the absolute right to inspect his statement. Such inspection is permitted only by order of the court. To protect a witness, a trial court may very well limit discovery. Here, defense counsel were afforded ample opportunity to prepare against Ranger's testimony through a pretrial interrogation conducted outside the presence of the jury. We are unable to find that Brown sustained any prejudice from not earlier knowing of the existence of Ranger's affidavit. We, therefore, deem it unnecessary to determine whether a "record" of a defendant's statement, such as the one in this case, falls within the scope and intent of Rule 16(a), Fed. R.Crim.P. Accordingly, we reject this aspect of Brown's claims relating to Ranger's testimony.

■ Although Ranger does not directly link Brown with any other person, appellants contend Brown's alleged statement "* * * this is my share of the loot" served to implicate Mourey and Briddle because other testimony showed that Brown, Mourey and Briddle were acting in concert. We reject this argument as unfounded, particularly since the alleged comment was made in a somewhat facetious setting.

■ In claiming prejudice from the court's ruling restricting full cross-examination of Ranger before the jury, appellants point to a statement in Ranger's affidavit which charges Brown as saying "he and associates had cased the Fort Madison post office prior to the burglary on several different days prior to the burglary." Appellants claim this statement is inconsistent with the testimony of several post office inspectors who closely watched the defendants' movements for ten days before the bur-

glary. Appellants suggest that had defense counsel been permitted to cross-examine Ranger as to this statement, Ranger's credibility would have been severely shaken. We think this argument is somewhat specious. While interrogation concerning this statement may have impaired the witness's credibility to some extent, it would have also served to further corroborate Brown's connection with the crime. Moreover, the trial court specifically advised Brown's counsel that he might inquire concerning this inconsistency. Counsel for Brown declined to do so. From a practical aspect, the record shows that defense counsel conducted a complete and effective examination of this witness.

## SUPPRESSION OF EVIDENCE

■■ Appellants contend that postal inspectors lacked probable cause to arrest defendants Briddle and Mourey, and thus the guns, gloves, currency and other items seized from the 1965 Chevrolet should not have been admitted into evidence. We disagree. Informants, described as reliable, advised postal authorities of an impending post office burglary planned by the three defendants. Subsequent surveillance, as noted above, disclosed highly suspicious activities of the defendants. On the day of the burglary, the defendants appeared to leave a "get-away" car in Hannibal, Missouri, and continued north on U. S. Highway 61 toward Fort Madison. A few hours later, postal authorities learned of the burglary at Fort Madison. These circumstances, which were known to the postal inspectors, established probable cause for the arrest of Briddle and Mourey as they returned to the get-away car. See Klingler v. United States, 409 F.2d 299 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969), and cases cited therein. Considering, in particular the fact that Brown remained at large at the time, we think the warrantless search of the automobile, including the trunk, at the time of the arrest was proper. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Golembiewski, 437 F.2d 1212 (8th Cir. 1971). See United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970); United States v. Taylor, 428 F.2d 515 (8th Cir. 1970). Further, the evidence shows that Briddle, the owner of the car, expressly consented to the search. We, therefore, hold that the items in question were lawfully seized.

## CONTINUANCE

■ Appellants finally contend that they had inadequate time to prepare for trial, since they were not aware until March 3, 1970, that the case would be called for trial on March 9. We note that the indictment was filed on December 30, 1969, and the defendants were arraigned the following January 21. One of the attorneys representing appellants was given about three-weeks notice of the March 9 date for trial. The prosecuting attorney granted defense counsel access to his office on Saturday and Sunday, March 7 and 8, to enable them to inspect the articles, materials, equipment, money, clothing and firearms which the government intended to introduce at trial. The record of the five-day trial shows a skillfully conducted defense, one requiring diligent preparation.

Continuance is a matter falling within the ambit of the discretionary powers of a trial court. Stamps v. United States, 387 F.2d 993, 995 (8th Cir. 1967); Ray v. United States, 197 F.2d 268, 271 (8th Cir. 1952). We find no abuse of the trial court's discretion in this instance.

Affirmed.