Donald Wayne GREGOR and Danny Ray
Turner, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. A–17409.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellants.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Charles F. Alden III, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

Appellants, Donald Wayne Gregor and Danny Ray Turner, were charged, tried by

a jury and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Robbery With Firearms. The jury assessed punishment for Turner, convicted after former conviction of a felony, at twenty-five (25) years imprisonment, and ten (10) years for Gregor; and from said judgments and sentences, a timely conjoint appeal has been perfected to this Court.

On the trial, William David Voss testified that on June 27, 1971 he was employed as a service station attendant at the Phillips 66 Service Station located at Southeast 25th and Prospect in Oklahoma County. He testified that at approximately 3:00 a. m. on the date in question, two white males in their early twenties or late teens entered the service station wearing stocking masks and carrying a gun. He was robbed of approximately Sixty Dollars ($60.00) and testified that he was unable to identify the robbers. Voss testified that as the robbers prepared to leave they told him to get back into the office and close the door or they would kill him. As soon as the robbers left, he picked up the telephone and summoned the police.

Leona Ruth Watkins testified she was the sixteen-year-old wife of Richard Watkins and that both she and her husband had participated in the robbery with the appellants. She stated she had been granted immunity and that her husband had earlier pled guilty and received a forty-year term for this crime. She testified that on the night in question she and her husband and two other men had committed two robberies prior to the time they met the appellants, Gregor and Turner. She stated they met Gregor and Turner sometime after midnight and got into Gregor's car. Gregor was driving and it was suggested that they rob another service station. Thereafter, they proceeded to a grocery store where her husband purchased some women's stockings to be put over their heads as masks. She stated that when they arrived at the service station, they took the stockings and Gregor's gun and she was left

alone in the car with instructions to keep watch. If anyone approached, she was to honk the horn or take off. She identified the appellants and testified that the three men returned to the car in approximately five minutes and they took off with Gregor driving the car. She stated that after approximately three or four blocks the police began pursuit. They pulled over and, as the officer got out of the car, took off again in a hurry. Subsequently, her husband fired a shot at the police car and instructed Gregor to slow down because he had "got him".

She stated they then proceeded to Gregor's mother-in-law's home and that Turner had "something with money in it," indicating the proceeds of the robbery.

Detective C. E. Phelps of the Oklahoma City Police Department testified that on the day following the date in question he conducted an investigation with reference to the crime and that in the course of that investigation, accompanied by one officer Jerry Campbell, interviewed Appellant Gregor. Phelps testified that prior to the interview he advised the appellant of his rights, in substantial compliance with the Miranda case, and indicated that on the first two or three occasions Appellant Gregor indicated he did not want to talk about the incident. Gregor then proceeded to give a detailed confession concerning the commission of the armed robbery virtually identical to Mrs. Watkins' testimony with the exception of that portion of the incident which took place out of Mrs. Watkins' sight. He stated that as they approached the service station to commit the robbery, they put the hose over their heads and that he stayed back near the corner to "jigger" or be a lookout while Turner and Watkins actually went into the service station.

Detective Phelps also stated he conducted a similar interview with Appellant Turner, advised him of substantially the same rights, and received substantially the same confession as he had from Appellant Gregor. Phelps also identified and sponsored

introduction into evidence of a pistol to which he stated Richard Watkins led him, next door to Appellant Gregor's home. The pistol was hidden underneath an old car out in the yard. He stated Watkins told him the gun had been given to him by Gregor.

At that point, appellants made an offer of proof with a Mercy Hospital records clerk who testified that Gregor was admitted on June 29, two days after the crime, for a right shoulder pain due to having been kicked two nights earlier, which would have been the night of his arrest. On cross-examination, she testified the X-ray reading was indicated as normal.

Officer John Rose testified as to being the pursuing officer of Gregor's car after receiving an armed robbery call in the vicinity of 25th and South Prospect. As he approached the area, he stated he observed a car traveling west at a high rate of speed with its lights out and he gave pursuit. He observed what appeared to be three white males and one white female in the vehicle and used his red light to bring them to a stop at approximately 26th and Phillips on a dirt road. He testified as he got out of his automobile and started to approach the suspect car it took off at a high rate of speed. He pursued the car for another ten blocks and at that point in time he saw what appeared to be a flash of gunfire, his windshield burst in front of him, glass went into his eyes, and a bullet struck him in the groin. He testified he lost control of his car and struck the median, at which point he heard and saw another gunshot and tried to get down in the floorboard to avoid being hit further. He also stated he could not identify the individuals who fired at him but he did later see the car abandoned in the area of Gregor's home.

Officer Gary James testified that he was an Oklahoma City Police Department Identification Technician who was called to process the crime scene and the abandoned vehicle. His description of the abandoned vehicle matched the description given by Officer Rose. He also stated that he found a partial box of nine millimeter ammunition in the car. Identification papers found in the vehicle bore the name of Donald Wayne Gregor. Other items found in the car included the leg from a pair of women's hose, two empty rifle cartridges and four empty pistol cartridges. He testified he found no fingerprints at the robbery scene but did find a fingerprint of Gregor's on the glass in the driver's side door.

The appellants offered no testimony in their own behalf.

The first proposition discussed in the excellent brief prepared in behalf of appellants by the Public Defender, Don Anderson, relates to the sufficiency of the Miranda warnings given by the officers prior to appellants' confessions. Appointed trial counsel strenuously urged that the Miranda warning given was insufficient because it did not specify that Appellant Gregor could have a court-appointed lawyer prior to any interrogation. Trial counsel also strenuously pursued the same line of attack in a motion to suppress which was overruled by the trial court.

The brief indicates the warning does not spell out specifically that the individual has the right to have an attorney present prior and during any interrogation and cites Reese v. State, Okl.Cr., 462 P.2d 331 (1969), for the proposition that this particular element of the warning is necessary. *Reese, supra,* expands on the original Miranda warning and indicates that the defendant, among other things, must be advised that he has a right to consult with, and have present, prior to, and during interrogation, an attorney either retained or appointed.

However, a close reading of that case indicates that it turns on the fact that on cross-examination in that particular case when the officer was asked if he told the defendant if he couldn't afford an attorney one would be appointed for him, the officer's response was "Yes, sir, in the event it came to court." It would appear that that

opinion turns particularly on the fact that the officer's answer was conditioned on whether or not the case ever went to court, which does not square with the fact situation before us.

■ We must, however, commend the Public Defender for his candor as he further indicates that Gregor had first, and on possibly two occasions, refused to talk, suggesting that he was aware of his Miranda rights and never did request a lawyer before talking to Officer Phelps and indicated in the brief that this would seem to eliminate any error concerning the Miranda rights. Further we note that while it was not introduced on the trial, a close reading of the Preliminary Hearing transcript, at Page 9, reflects that Gregor not only stated to Officer Campbell that he understood his rights, but that prior to giving his detailed confession, he executed a written rights waiver which was introduced into evidence at the Preliminary Hearing. The court also feels compelled to point out at this particular juncture that the *Reese* case, *supra,* has been modified somewhat by later holdings in Tice v. State, Okl.Cr., 478 P.2d 916 (1970), and Peterson v. State, Okl.Cr., 473 P.2d 293 (1970), wherein we held the words of the Miranda warning do not constitute a ritualistic formula which must be repeated without variation in order to be effective, but words which convey the substance of the warning along with the required information are sufficient.

Appellants' second and final contention is that the admission of accusatory hearsay in three instances constitutes reversible error. Appellants contend that Gregor's confession was hearsay as to Turner, that Turner's confession in turn was hearsay as to Gregor, and finally the statements made by Watkins to Officer Phelps and the subsequent finding of the pistol was hearsay as to both Gregor and Turner.

Appellants cite four cases where convictions were reversed because of the admission of accusatory statements made in the defendants' absence, five cases wherein convictions were reversed because of statements made in the defendants' presence, and one case, McGrew v. State, Okl.Cr., 293 P.2d 381 (1956), which stands for the proposition that it is immaterial whether the accusatory hearsay is uttered in the defendant's presence or absence, it is still inadmissible.

Appellants assert that the error arises from the fact that evidence of some weight is brought to the jury via the confessions in a form not subject to cross-examination and to the appellants' way of thinking in violation of the rule set forth in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which held that the admission of a confession of a co-defendant who did not take the stand, deprived the defendant of his rights under the Sixth Amendment confrontation clause. Appellants assert finally that neither Gregor nor Turner could be put to cross-examination without waiving the right to remain silent.

■ The Attorney General, in his brief, distinguishes the case at bar from all of the Oklahoma cases cited on the simple facts before us. In all of the Oklahoma cases cited, there was but one confession. In the case at bar, both appellants confessed. As the Attorney General points out succinctly, the distinguishing factor here is that both appellants made substantially identical statements of their own guilt and neither, by their statements, stood in antagonistic positions at the trial as between themselves. The Attorney General contends, and we feel correctly so, that this factor takes the case out of the purview of *Bruton, supra,* and makes an exception to the rule of that case because the turning factor involved is that the denial of the Sixth Amendment right to confrontation must result in some prejudice by reason of the admission of the confession into evidence.

■ This Court does not see how the appellants can seriously contend that the statements of a co-defendant can prejudice one who has already admitted his participation in a criminal act. It is difficult to

see how the corroboration that grows out of one confession and affects another can further prejudice the position of one who has already freely and voluntarily confessed his own guilt.

The Attorney General has further bolstered his position with the authority of Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1014, 31 L.Ed.2d 340 (1972). There the United States Supreme Court held that the admission, at a joint murder trial in which neither defendant takes the stand, of testimony by one defendant concerning a co-defendant in the commission of the crime is harmless error beyond a reasonable doubt as to the co-defendant where the co-defendant's own confession was detailed and completely consistent with the objective evidence and not contradicted by any other evidence in the case. We have almost exactly that situation before us in the case at bar. *Schneble, supra,* held further that a mere finding of a violation of the rule of the *Bruton* case does not automatically require reversal of a criminal conviction and further that reversal of a criminal conviction is not required where there is no reasonable possibility that improperly admitted evidence contributed to the conviction.

There can be no doubt that the evidence of the Witness Voss, Mrs. Watkins and the confessions of either appellant would have been sufficient to convict either appellant. Therefore, while we agree that the statements made by co-defendant Watkins to Officer Phelps were clearly hearsay and inadmissible, no material prejudice resulted therefrom and the conviction would have stood without the admission of such testimony.

■ We observe further that by far the better practice would have been followed in this case had the trial judge instructed the jury that the confessions or admissions into evidence of statements by the appellants should have been considered as to the confessor only and that such confessions or statements would normally be considered hearsay as to any other defendant. However, the record does not reflect that any such instruction was ever requested by defense counsel and in the absence of such a request, we cannot hold that such error was fundamental on the part of the trial judge.

■ We observe further it would have been by far the better practice for defense counsel to have requested a severance in the case at bar and it would have been error for the court to have refused such a request. Fugett v. State, Okl.Cr., 461 P.2d 1002 (1969). But again, the record is silent as to such a motion.

Finally, we observe that the sentences imposed by the jury are well within the statutory punishment guidelines set by the legislature.

In addition to our consideration of the briefs and authorities presented herein, a careful reading of the record and the tran script reveals no error which would justify modification or require reversal. The judgments and sentences are, and the same are hereby, affirmed.

BUSSEY and BRETT, JJ., concur.