Alvin Daniel SANDS, Appellant,

v.

The STATE of Oklahoma,
Appellee.

No. F–74–816.

Court of Criminal Appeals of Oklahoma.

Sept. 24, 1975.

Rehearing Denied Oct. 27, 1975.

**210** ■ ▬▬▬▬

Mac Oyler, Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Alvin Daniel Sands, hereinafter referred to as defendant, was charged and tried conjointly with co-defendants Kenneth Dale Tiger, Charles St. Germaine, and Orlin Dale Webster, and was convicted in the District Court, Oklahoma County, Case No. CRF–73–3339, for the offense of Robbery with Firearms in violation of 21 O.S.1971, § 801. His punishment was fixed at fifteen (15) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was Donald M. Whitton, the clerk of the Crestwood Liquor Store which was robbed on the evening of November 17, 1973. The witness testified that at approximately 8:05 p. m. one man entered the store and asked for tequila. The tequila was behind the clerk and when he turned around to point to the tequila, two other men, both carrying rifles, entered the store. The witness further testified that the first man who came in carrying a rifle, actually the second man through the door, pointed a gun at him and told him, "This is a holdup." According to the witness' testimony the man who told him it was a holdup held a gun on him while the other two men went through the cash register. The witness also testified that a Mrs. Maney, the wife of the owner of the liquor store, was present at the time of the robbery. She was in the back of the store cleaning and was unaware of the robbery which was taking place. The robbers did not realize that anyone else was in the store until Mrs. Maney moved some bottles which created noise heard by the robbers who were still out front. The witness told the men that the lady was in the back, at which time the men forced the clerk to the back part of the store. The clerk and Mrs. Maney remained in the back of the store until the robbers had finished cleaning out the register and departed from the premises.

The witness and Mrs. Maney did not see the car that the assailants used. However, Whitton, the clerk, was able to identify the first gunman, the one who told Whitton, "This is a holdup," as the defendant Alvin Daniel Sands. Whitton also stated while under direct examination, that the gun which Sands held on him was the same kind of gun he had become familiar with while in Viet Nam, and that he therefore had no trouble identifying a gun used in the robbery as the same kind of gun presented as evidence at the trial.

This witness further testified that all three robbers were Indians; that they took about $120.00; that the robbery lasted about two minutes; and that the men cut the telephone line before leaving the store.

In a lineup the following day, Whitton positively identified the defendant Sands as the armed robber who pointed the gun at him, informed him of the holdup, and forced him into the back room.

The State's next witness was Mrs. Josephine Maney, the wife of the owner of the liquor store, who was in the back of the store during the first part of the robbery. Mrs. Maney testified substantially the same as did Donald Whitton. She testified that: the defendant Sands was positively the man who forced Whitton to the back of

the store and held the gun on them; the weapon marked as State's Exhibit No. 1 was similar to the one used by Sands; she could not tell how the defendants got away, whether by car or by foot.

The State presented as its third witness, Brent Gaylon, an officer with the Oklahoma City Police Department, who was on duty the night of November 17, 1973, into the morning hours of November 18, 1973. Officer Gaylon testified that earlier that evening, November 17th, he had investigated the robbery of the Crestwood Liquor Store. At approximately 12:20 a. m. on the morning of the 18th, he made a routine check of the Rouge Lounge. Officer Gaylon also testified that while making this routine investigation in the area, commonly known as the Indian ghetto, he was keeping in mind the description of the three armed robbers who had earlier that evening robbed the Crestwood Liquor Store. At the Rouge Lounge, Officer Gaylon observed the four co-defendants, though he did not know of their alleged involvement in the robbery at this time. Three of the men, Tiger, Sands and Webster, were in the lounge and St. Germaine, who Officer Gaylon had observed while walking through the parking lot of the Rouge Lounge, was passed out in the front seat of an automobile.

As Officer Gaylon was leaving the lounge, he placed St. Germaine under arrest for Public Drunk. After moving St. Germaine to the scout car, he returned to the vehicle and confiscated a liquor bottle which he observed in the front floorboard. At that time Officer Gaylon was confronted by defendant Sands and co-defendant Tiger and a third party, Dan Creepingbear (who is not a co-defendant herein). Sands asked officer Gaylon what he was going to do with St. Germaine, and when Officer Gaylon informed Sands that St. Germaine would be jailed for Public Drunk, Sands replied that no officer would arrest any of his people while he was around. At that point Officer Gaylon arrested Sands and was attempting to place

him in the scout car with St. Germaine when a bystander yelled for Officer Gaylon to watch out because Tiger had pulled a gun. The bystander grabbed Tiger by the arms and Officer Gaylon shoved Sands into the scout car with St. Germaine. Officer Gaylon then returned to the bystander and assisted him with Tiger. The bystander informed Gaylon that Tiger had thrown the gun away but he was unable to see exactly where. Since the door of the co-defendant's car was standing open, Officer Gaylon cursorily searched the car thinking that Tiger might have tossed the gun into the open automobile. However, this search proved fruitless and after further searching the immediate vicinity, also to no avail, Officer Gaylon went back into the lounge and asked for the owner of the automobile. At this time co-defendant Webster stepped forward and said he was the owner of the vehicle. Officer Gaylon briefed Webster as to the preceding events, since Webster had been inside the lounge, and requested Webster's consent to search his car. After informing Webster that he did not have to sign a search waiver, Webster stated that he would sign it anyway. Upon obtaining Webster's consent, Officer Gaylon and another officer who had arrived at the scene made a search of Webster's car. While searching the automobile Gaylon testified he noted the back seat was out of position and there was a resulting gap in the seat where a weapon could easily have been tossed. On removing the bottom section of the back seat, the back panel fell off revealing the trunk of the automobile and the weapon which was labeled State's Exhibit No. 1.

The State called as its next witness, Detective Harold D. Neal of the Oklahoma City Police Department. Detective Neal testified that he was assigned to the investigation of the Crestwood Liquor Store robbery. Detective Neal first related to the jury his interrogation of co-defendant Webster who, after being informed of his constitutional rights, told Detective Neal that he had been involved in the Crestwood

Liquor Store robbery with some other persons. Webster testified that he and the other involved persons had been at the Red Race Bar on the afternoon of November 17th and after leaving the Red Race Bar they went to an apartment and got an AK–47 (the weapon used in the robbery). Leaving the apartment, the party went to the Crestwood Liquor Store where Webster remained in the car and then drove from the scene of the crime after the robbery had been completed. Neal further testified that Webster told him that after the robbery he eventually went .to the Rouge Lounge where he was arrested.

Neal also testified that he had interrogated defendant Sands. According to Neal, after he had informed the defendant of his constitutional rights, defendant Sands told Neal that he had taken part in the robbery and that he had been the one who pointed the AK–47 at the clerk, Donald M. Whitton. According to Detective Neal, after being apprised of their constitutional rights, co-defendants Tiger and St. Germaine admitted to being with defendant Sands all evening on the 17th of November, 1973.

Thereafter, the State rested.

As a witness for the defense, Susie Silverhorn was called to the stand and she testified that she was with the defendant, Alvin Daniel Sands, from 6:30 p. m. until 10:30 p. m. on the evening of November 17, 1973. She further testified that during that time neither she, nor the defendant, went to the Crestwood Liquor Store.

Other testimony was presented both on behalf of the State and the defendant. However, that testimony largely taken from in camera proceedings, bears particular relevance to one of the several assignments of error, and such testimony will herein be presented within the context of that assignment.

As a basis for the defendant's first assignment of error, the defendant points to the cross-examination of the defendant's witness, Susie Silverhorn, who was questioned by the prosecution as to her failure to come to the District Attorney's Office and offer an alibi for the defendant, Alvin Daniel Sands. Also within this context, the prosecution called in rebuttal Harold D. Neal, the detective who had earlier testified, that at no time during the confession of Sands did Sands refer to, or mention, anyone by the name of Susie Silverhorn.

The first assignment of error, as stated by the defendant, is as follows: "The questioning of Detective Neal on rebuttal concerning the defendant's failure to advise the officer of his alibi after his arrest, constitutes fundamental error." The defendant contends that by allowing such testimony the prosecution is allowed to penalize the defendant for exercising his Fifth Amendment privileges. The defendant cites several cases in support of this contention—*Buchanan v. State*, Okl.Cr., 523 P.2d 1134 (1974); *Miles v. State*, Okl. Cr., 525 P.2d 1249 (1974); *United States v. Kroslack*, 426 F.2d 1129 (7th Cir. 1970); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); and *Johnson v. Patterson*, 475 F.2d 1066 (10th Cir.1973).

This Court, in reviewing the above cases, finds that none of these are in point. The cases cited by the defendant are either cases in which the defendant was cross-examined as to his failure to present his alibi, or the defendant asserted his Fifth Amendment rights and comment was made by a witness as to the assertion of those rights. However, in the instant case the defendant was not being cross-examined, nor did the defendant assert his constitutional right to remain silent, but rather, the defendant herein gave a full confession of the robbery to the interrogating officer.

There is no merit to the contention that the questioning of Susie Silverhorn, or the closing argument in relation to Susie Silverhorn, is reversible error. The right to silence and the protection from

self-incrimination does not extend to third parties. See, *Glover v. State,* Okl.Cr., 531 P.2d 689 (1975); *Wright v. State,* Okl.Cr., 531 P.2d 696 (1975); and *Bauhaus v. State,* Okl.Cr., 532 P.2d 434 (1975).

As to the testimony of Detective Neal, offered in rebuttal to the testimony of Susie Silverhorn, we also hold that there is no reversible error. In *Kroslack,* supra, cited by defendant, the FBI agent testified that the defendant during questioning refused to make a statement. As aforementioned, such is not the circumstance in the instant case. The reasoning of the Court in *Kroslack* was based on the fact "laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." Thus, it becomes obvious that when the defendant has waived his Fifth Amendment rights, *Kroslack* is not applicable. The defendant waived his right to remain silent, and the question by the prosecutor as to whether or not the defendant ever mentioned Susie Silverhorn during the confession was not error.

The cases cited by the defendant, when all are taken together, stand for the proposition that a defendant should not be penalized for assertion of his constitutional rights. We agree; however, in the instant case these cases are clearly inapplicable and distinguishable, since the defendant did not assert the rights, but rather chose to waive them and make a statement. For the above reasons we find the defendant's first assignment of error to be totally without merit.

The defendant's second assignment of error is predicated upon several remarks made by the prosecution during the various stages of the trial which the defendant contends appealed to the passion and prejudice of the jury resulting in an unjustified verdict. This Court in reviewing the transcript in its entirety, and reading those particular remarks which are construed by the defendant as an appeal to the passion and prejudice of the jury, finds nothing which would justify modification or reversal of the judgment and sentence.

■■ The determination of whether or not conduct and remarks of counsel will serve as a basis for reversal is contingent upon the effect which said remarks have on the rights of defendant. We must keep in mind that the defendant's rights are of utmost importance and if remarks of the prosecutor, though inappropriate or rude, do not affect the rights of the defendant, then they shall serve no basis for reversal. In *Kite v. State,* Okl.Cr., 506 P.2d 946 (1973) and *Pickens v. State,* Okl.Cr., 450 P.2d 837 (1969), this Court held that for remarks of the prosecuting attorney to constitute reversible error they must be flagrant and of such a nature as to be prejudicial to the defendant. In the instant case we find that the record is void of any comment which was made by the prosecution for the purpose of appealing to the passion and prejudice of the jury. Thus, we hold that the defendant's second assignment of error is without merit.

The defendant's third assignment of error is predicated upon the facts beginning with the arrest of St. Germaine and ending with the consent search resulting in the discovery of the rifles. The defendant contends that the arrest of St. Germaine was illegal and that, consequently, everything which followed therefrom was also illegal. However, as is borne out by the facts, the search immediately subsequent to the arrest of St. Germaine, Sands and Tiger, produced no fruits. After this nonproductive search of the automobile, the legality of which is not an issue herein, Officer Gaylon turned to a different course of action by pursuing a search based on the consent of the owner of the automobile, co-defendant Webster. And, from this search based on the consent of Webster, the evidence which defendant contends should have been suppressed was found.

This Court has determined that the only relevant issue as to the legality of this search producing the rifles is the validity of the consent form. The first search produced nothing, therefore, the legality of the preceding arrest is not relevant to the

separate course of action by Officer Gaylon which resulted in the attainment of a search consent form. Therefore, this Court deems it unnecessary to pass upon the issue of those arrests as they have no effect on the validity of the consent search.

We now direct our attention to the validity of that search consent. The defendant contends that the consent was invalid because: it was not voluntarily given; and, there is no evidence that Officer Gaylon apprised the defendant of his Fourth Amendment rights. An in camera hearing was held as to the determination of the admissibility of the evidence found subject to the alleged consent search. Officer Gaylon's testimony concerning the circumstances surrounding the consent by co-defendant Webster have been presented in the facts. However, during the in camera hearing co-defendant Webster testified that he did not voluntarily consent but, rather, he testified that the officer forced him to sign a piece of paper, the contents of which he had no knowledge, and that he was physically struck across the back and the head until he complied with the officer's orders to sign the paper. He complains that he was never informed that he did not have to sign the paper and that he was never given an opportunity to read the contents. This testimony of Webster, which was not introduced to the jury, totally contradicts the testimony of Officer Gaylon. During the in camera hearing for the sake of expediency, the defendant stipulated that if the other officers who were present were to testify as to the voluntariness of the consent, their testimony would have been the same as Officer Gaylon's.

■■■ The legality of the search and seizure based on the evidence of the consent was properly a determination of fact for the trial court. See, *Taylor v. State,* 91 Okl.Cr. 124, 216 P.2d 362 (1950); *Roberts v. State,* 95 Okl.Cr. 365, 245 P.2d 759 (1952); *Fulbright v. State,* 96 Okl.Cr. 36, 248 P.2d 651 (1952); *Kizer v. State,* 96 Okl.Cr. 92, 249 P.2d 132 (1952). There is,

though, another fact which would determine the legality of the search, namely, whether or not the consent was voluntarily given. This is undoubtedly a question of fact for the jury. *Pickens v. State,* Okl. Cr., 372 P.2d 618 (1962); *Cox v. State,* Okl.Cr., 395 P.2d 954 (1964); *Lorenz v. State,* Okl.Cr., 406 P.2d 278 (1965). However, considering the fact that no evidence controverting the testimony of Officer Gaylon was presented to the jury, the jury was apprised of nothing as to the voluntariness which would have suggested any other decision than that which they reached.

■■■ In light of the foregoing, the only determination remaining to be reviewed by this Court is the sufficiency of the evidence on which the trial court admitted to the jury the fruits of the contested search. And, as we have often held, if there is any evidence reasonably supporting the decision of the trial court, this Court will not reverse on appeal. *Wilkes v. Raines,* Okl.Cr., 372 P.2d 621 (1962); *Cox v. State,* supra. The testimony of Officer Gaylon is more than sufficient to support the decision of the trial court to submit the evidence to the jury. Therefore, the defendant's assignment that the voluntariness of the consent was not established is without merit.

As to the second proposition within the defendant's third assignment of error, the defendant contends that he was not apprised of his Fourth Amendment rights prior to the consent search. However, a review of the transcript most clearly persuades this Court that this contention has no merit. On page 159 of the trial transcript Officer Gaylon positively testified that he informed the co-defendant Webster that he did not have to sign the waiver, but Webster agreed to sign anyway. In light of the foregoing discussions, this Court is of the opinion that the defendant's third assignment is entirely without merit.

The defendant contends, as his fourth assignment, that the trial court abused its discretion in denying a severance. The de-

fendant alleges that prejudice occurred when Detective Neal testified as to statements made by the other three co-defendants, Tiger, St. Germaine, and Webster. As to the granting of severance in Oklahoma, there are innumerable cases holding that such a decision is purely a matter of discretion left to the trial judge for determination and absent a clear abuse of that discretion resulting in prejudice, this Court will not reverse the decision of the trial judge. *Fox v. State,* Okl.Cr., 524 P.2d 60 (1974); *Cherry v. State,* Okl.Cr., 518 P.2d 324 (1974); *Hinds v. State,* Okl.Cr., 514 P.2d 947 (1973); *Wright v. State,* Okl.Cr., 505 P.2d 507 (1973); *Fugett v. State,* Okl.Cr., 461 P.2d 1002 (1969).

Therefore, in the instant case whether or not a severance should have been granted is contingent upon whether or not there was an abuse of discretion which prejudiced the defendant Sands. Along this line the defendant maintains that had the trial court granted a severance, statements made by the other co-defendants would not have implicated Sands. The defendant cites, in support of this contention, several cases— *Phillips v. State,* Okl.Cr., 330 P.2d 209 (1958); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Fugett v. State,* supra; *Clark v. State,* Okl.Cr., 509 P.2d 1398 (1973); *Monroe v. State,* Okl.Cr., 512 P.2d 214 (1973). The foregoing cases, with the exception of *Clark,* are not in point, and to the extent that *Clark* is in point it is contra to the contention of the defendant. In *Phillips, Bruton,* and *Monroe,* the defendant did not confess and the admission of the co-defendant's confession was prejudicial to the defendant. But in the instant case Sands did confess, which renders the cases inapposite. In *Fugett,* supra, which the defendant also cites, a severance was necessary where one public defender was forced to represent three co-defendants with conflicting interests. Again, this case is distinguishable from the present case, as defendants Sands had his own counsel.

■ The entire reasoning behind not allowing the confessions of co-defendants to be admitted at trial by testimony of the interrogating officer, or any other third party for that matter, is because the defendant who does not make the confession is denied an opportunity to cross-examine the person who made the confession. The consequence of this is to allow a directly incriminating confession without a confrontation of the adverse party, all of which is in violation of the Sixth Amendment and manifestly prejudicial. See, *Bruton,* supra. In the instant case, we are of the opinion that the defendant's fourth assignment of error is without merit. A reading of the cases offered by the State which are clearly in point, dictate the rejection of the defendant's contention. See *Gregor v. State,* Okl. Cr., 505 P.2d 519 (1973); *Davis v. State,* Okl.Cr., 542 P.2d 532 (1975); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Justice v. State,* Okl. Cr., 512 P.2d 1389 (1973).

In the first place, the statements made by co-defendants Tiger and St. Germaine, to which Detective Neal testified, were not confessions, but were statements concerning their whereabouts on the night of the robbery. The fact that Tiger and St. Germaine said they were with defendant Sands has no prejudicial effect on Sands whatsoever considering the fact that Tiger and St. Germaine admitted nothing of the robbery. As to the confession of co-defendant Webster, not once was the name of Sands mentioned as a participant in the robbery. Relying on *Gregor,* supra, if the confession of co-defendant Webster did indirectly incriminate Sands, it was not prejudicial since Sands himself confessed. In *Davis,* supra, this Court held that the confession of Joney Joe Lusty, a co-defendant, was not prejudicial to the defendant, *Davis,* where the admission did not substantially increase the likelihood of conviction. In *Justice,* supra, which cites *Schneble,* supra, this Court held that unless there is a reasonable possibility that the

improperly admitted confession contributed to the conviction, there is no prejudicial error. In *Gregor,* supra, where confessions of both defendants were admitted into evidence, neither confessors could complain that the other's confession increased his own likelihood of conviction.

In light of these decisions, the confession of Sands and the identification of Sands by Josephine Maney and Donald M. Whitton, the confession of co-defendant Webster, which never directly implicated defendant Sands, can in no way be considered as prejudicial. The guilt of the defendant is overwhelming and this Court fails to see any manner in which the statements of the co-defendants prejudiced defendant Sands.

As his fifth and final assignment of error, the defendant contends that his confession was not preceded by adequate Miranda warnings, thus rendering the confession void for evidentiary purposes. The defendant maintains, within the context of this proposition, that the defendant was not informed that he could terminate the conversation at any time or that he was entitled to counsel prior to questioning.

Detective Neal testified, at page 260 of the transcript, as follows:

"A. . . . I also advised him that he could terminate the interview any time that he wanted to and he advised me that he understood these rights."

As to the contention that the Miranda warnings given by the officers were inadequate in that the defendant could not have understood that he had a right to counsel prior to any interrogation, we find the following at pages 259–260 of the transcript:

"A. I advised him that he had the right to remain silent, anything he told me could and would be used against him in a court of law, advised him that he had a right to confer privately with an attor-

ney before he was interviewed and also he had a right to have an attorney present during this interview.

"I advised him if he was financially unable to afford an attorney one would be appointed for him by the Court; I also advised him that he could terminate the interview any time that he wanted to and he advised me that he understood these rights."

More specifically, the defendant contends that the warning is defective because it does not add the words "prior to interrogation" immediately following the phrase, "I advised him if he was unable to afford an attorney one would be appointed for him by the court . . . ."

■ In reading the warning given by the officer we are of the firm opinion that even though the words are not verbatim, the requirements of a fully effective equivalent warning are present. The warning is not ambiguous, but rather it clearly points out that one is entitled to counsel prior to interrogation. It also points out that if an officer does begin interrogation without the presence of a lawyer, the defendant may stop him and refuse to answer. In *Hill v. State,* Okl.Cr., 523 P.2d 1097 (1974), citing with approval *Peterson v. State,* Okl.Cr., 473 P.2d 293 (1970), this Court held that the exact words from Miranda are not a ritualistic formula, the perfect reading of which is requisite to an adequate apprisal of constitutional rights. The warning, in the instant case, fully informs the defendant of his rights. We are aware that the placement of certain words can make a substantial difference in meaning, but from the totality of the warning in the instant case the defendant knew he did not have to subject himself to interrogation prior to the appointment of legal counsel. It might also be noted that the warning in *Peterson,* supra, does not in-

clude the phrase "prior to interrogation" after the words "if you cannot afford counsel, counsel will be appointed for you."

For the foregoing reasons we hold that the warning given by Officer Neal, when taken in totality, fully apprises the defendant of his constitutional rights. The judgment of the trial court was correct and the admissibility of the confession subsequent to the Miranda warning was proper. Accordingly, this assignment of error is without merit.

For all of the above and foregoing reasons, the judgment and sentence appealed from is accordingly, affirmed.

BLISS, J., concurs.

BRETT, P. J., concurs in results.