WILL McELWEE v. THE STATE.

No. 3087. Decided April 8, 1914.

**1.—Local Option—Argument of Counsel—Charge of Court.**

Where the court instructed the jury not to consider counsel's argument to the effect that the jury's verdict rested on the fate of a State's witness, etc., which was improper, it may not be sufficient to justify a reversal on that ground.

**2.—Same—Agency—Conflicting Charges—Weight of Evidence.**

Where, upon trial of a violation of the local option law, the court submitted requested charges from both sides on the question of agency, which were so in conflict with each other and contradictory of each other that the jury were misled by them, the same was reversible error; besides, the court's main charge was on the weight of the evidence.

**3.—Same—Variance—Purchaser.**

Where, upon trial of a violation of the local option law, the defendant was charged with selling intoxicating liquors to William Scott and the proof

showed, if he sold any, it was to Jabez Scott, the conviction could not be sustained.

. Appeal from the County Court of Nacogdoches. Tried below before the Hon. Geo. F. Ingraham.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty-five days confinement in the county jail.

The opinion states the case.

*V. E. Middlebrook*, for appellant.—On question of variance of names of purchaser: Tippit v. State, 53 Texas Crim. Rep., 180; Arnold v. State, 47 id., 556.

On question of court's charge on agency: Vanarsdale v. State, 35 Texas Crim. Rep., 587; Brookman v. State, 50 id., 277; Lafrentz v. State, 57 id., 464; Holloway v. State, 53 id., 246.

On question of weight of evidence: Murray v. State, 56 Texas Crim. Rep., 420.

*C. E. Lane*, Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of violating the local option law.

Without dispute or question this record discloses that Jabez Scott approached appellant and asked him if he knew where he, Scott, could get a quart of whisky. Appellant said he thought he did. Scott asked appellant how much it would cost and appellant said $1.50. He then asked appellant how long it would take him to get the whisky. He said about twenty or twenty-five minutes. Scott did not have time to wait, so he gave appellant the $1.50 and told him that his son, Wm. Scott, would wait and get the whisky, and he instructed appellant to deliver the whisky when purchased to his son, Wm. Scott. Jabez Scott so testifies for the State as does Wm. Scott. It is further testified that Wm. Scott was present and heard all the conversation, and waited for the whisky, and that appellant brought the whisky to him for his father. These facts are undisputed. Appellant testifies to the same facts, and further testifies he had no interest in the whisky, nor did he get any part of the $1.50. He demurred to giving the name of the man from whom he purchased the whisky for Scott, but when being pressed for it he gave the name of John Crawford. He says that Randolph Smith showed him the man from whom he got the Whisky. Smith is dead; he was killed during Christmas week. Appellant further testified: "The man I got the whisky from is a white man. I know him now but I did not know his name when I got the whisky. I am afraid to tell his name. I am scared to tell it, but if I have to, I have to. It was Mr. John Crawford." John Crawford testified that he did not sell appellant the whisky and that he never delivered any whisky to appellant. This is, in substance, the case.

The only disputed question seems to arise on the contradiction in the

testimony between appellant and Crawford. The evidence then seems to be clear that Jabez Scott gave appellant $1.50 with which to buy him some whisky; that not having time to wait for the whisky, Scott instructed appellant to turn it over to his son, which was done. Appellant claims to have bought the whisky from Crawford as the agent of Scott, and that he, appellant, did not sell any whisky, and had no interest in it. This was denied by Crawford. The sale was alleged to have been made to Wm. Scott and not to his father, Jabez Scott. The prosecuting attorney uses this language in his argument: "On your verdict rests the fate of John Crawford; if you find this negro not guilty I will have John Crawford in jail just as soon as you return your verdict." The court instructed the jury not to consider this argument as it was improper. The court was correct in this. The argument should not have been used, but in view of the instructions, it may not be sufficient to justify a reversal on that ground.

At the request of the county attorney the following instruction was given: "You are instructed that if you find from the evidence that the money was paid to Will McElwee by Jabez Scott and the delivery was made to William Scott, this would in terms of law be a sale to William Scott and you will find the defendant guilty and assess his punishment as stated in the main charge, and if you have a reasonable doubt of the same you will acquit the defendant." Proper exception was reserved to this on the ground that it was on the weight of the evidence and virtually an instruction to find the appellant guilty, and under the undisputed facts the jury could do only one thing under this charge, and that was to find appellant guilty, and that it was also a direct contradiction of the defendant's special charge on agency, which was given by the court, and took the proposition of agency entirely away from the jury. This bill of exceptions was approved by the trial judge with the explanation that the two special charges mentioned were about different phases of the case and not contradictory as he understood them. The special charge given at the request of appellant is as follows: "You are further instructed that if Will McElwee was asked by Jabez Scott, if he could get him some whisky, and the defendant in compliance with the request did get him the whisky, and the defendant had no interest in the whisky, but was acting as the agent of Jabez Scott, he is not guilty, and you will so find if you believe he so got the whisky, or if you have a reasonable doubt as to whether he so got the whisky for Jabez Scott, you will find him not guilty." We are of the opinion that the two charges, the one asked by the county attorney and the one given at request of defendant, are conflicting and contradictory, and we are further of the opinion that the court's charge was on the weight of the evidence and assumes a most material fact in the case against the defendant and ignores appellant's defense in the special charge given at the request of the county attorney. If appellant bought the whisky for Jabez Scott and did not sell it or have any interest in the sale, he would be acting as agent and not guilty. The State met this testimony with that of Crawford, which raised the

issue sharply as to sale. Under the county attorney's instruction appellant would be guilty if Jabez Scott paid McElwee, appellant, the money, and the whisky was delivered to Wm. Scott, his son, whether appellant was the agent or not. If he was the agent of Jabez Scott he would not be guilty.

This brings up another question which is directly an issue in the case, and it is this: The charge against appellant was for selling intoxicating liquors to Wm. Scott. The facts show if he sold it, it was to Jabez Scott, and not Wm. Scott. When the trade was made there was present Jabez Scott and his son, Wm. Scott, and appellant. Wm. Scott knew all about the facts of the case and had no interest in it at all, except to receive the whisky from appellant for his father. His father had paid the money in advance for the whisky. · The sale, therefore, would be to Jabez Scott and not to Wm. Scott. The facts are pointed and positive. There is no contradiction of the fact that appellant, if he was guilty at all, was guilty of selling to Jabez Scott and not Wm. Scott. The trade was made and the money paid in advance, and Wm. Scott remained, because his father did not have time to do so, to get the whisky in case appellant should deliver it, not for Wm. Scott but for Jabez Scott.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*