E. H. LEATHERS v. STATE.

No. A-9290. Dec. 10, 1937.

(74 P. 2d 967.)

J. Q. A. Harrod and Laynie W. Harrod, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis Morris, Co. Atty., for the State.

BAREFOOT, J.   The defendant was charged with the crime of selling intoxicating liquor to a minor, was tried, convicted, and sentenced by the court to pay a fine of $300 and to serve a term of three months in jail, and has appealed.

The facts revealed by the evidence of the state are that the prosecuting witness, Bettie Lou Reed, is a little girl, nine years of age.   She was living with her grandmother in Oklahoma City, near where the defendant lived and owned and operated a store.   On Monday, August 3, 1936,

she went to defendant's store. Her testimony was as follows:

"Q. How did you happen to go into that store to buy that whisky the day before? A. Grandmamma sent me. Q. Your grandmother sent you? A. Yes, sir. Q. How much money did you have? A. A quarter. Q. This man in the store, this man over here, was he there when he got down there? A. Yes, sir. Q. What did you say to him? A. I said, 'Curley, mamma wants some whisky.' Q. When you said mamma you meant your grandmother, did you? A. Yes, I meant my grandmamma. Q. What did he do when you told him that? A. He went in there and got it. Q. He went in there and got it? A. Yes, sir. Q. When you say he went in there and got it, where did he go to get it? A. In the back. Q. Where did Curley live? A. In the back. Q. He had a store out in front? A. Yes. Q. Did you go in the back with him? A. Yes. Q. All right, what did you do when you got in the back? A. He poured some liquor in a bottle. Q. He put some liquor in the bottle? A. Yes. Q. Where did he get the bottle? A. I took the bottle with me. Q. Did it have any writing on it? A. No, it was plain glass. Q. Glass bottle? A. A plain glass bottle. Q. Did you take the bottle home to your grandmother's place? A. Yes, sir. Q. Where did he get the whisky that he poured into the bottle? A. He got it out of the half gallon fruit jar. Q. Was it a round or a square jar? A. Square. Q. And he filled the bottle up you had with you? A. Yes. Q. Did you pay him for it? A. Yes, sir. Q. How much did you pay him? A. A quarter. Q. You gave it to him there? A. Yes. Q. What did you do with the bottle of whisky? A. I put it in the sack. Q. What did he do with it? A. What did he do with it? Q. What did you do with it? A. I took it home. Q. He gave it to you? A. Yes, sir. Q. And you took it home? A. Yes, sir. Q. When you got home, who did you give it to? A. I gave it to grandmamma."

On the day following, Tuesday, the 4th day of August, 1936, this little girl was taken to the office of the county

attorney, and there related her story to the assistant county attorney as given in evidence in this case. The assistant county attorney sent her, in company with two officers, and another party, to the place of business of the defendant for the purpose of having her identify the defendant, as the one from whom she secured the liquor the day before. The officers, over the objection and exception of defendant, were permitted to testify that when they went to the place of business of the defendant, he immediately went into the rear of the room where he lived, and one of the officers followed him and found a bottle of whisky on the bed, and that the officer said to him:

"You ran away, but you did not get away with it far enough."

The defendant did not take the witness stand in his own behalf, and the above was all the evidence offered by the state. The defendant demurred to the evidence and made a motion for a directed verdict requesting the court to instruct the jury as follows:

"You are instructed in this case that if you find and believe from the evidence or have a reasonable doubt thereof, that the grandmother of the child, Bettie Lou Reed, gave Bettie Lou Reed the money and sent her with the money to buy whisky and that the witness Bettie Lou Reed went to the place of business of the defendant and informed the defendant of such facts and the defendant delivered the whisky to said child and the child delivered the whisky to the grandmother, without being opened, would constitute a sale to the grandmother and not the child, and you should return a verdict in favor of the defendant and against the state."

The court overruled the defendant's requests, to which he excepted. A part of instruction No. 6, given by the

court, and to which the defendant excepted, was as follows:

"Where one person delivers to another intoxicating liquors for a consideration of money, then and there paid, such transaction is a complete sale as far as the seller is concerned, and it is immaterial that the purchaser subsequently delivers such liquor to another person or persons for a price, or otherwise."

This constitutes the first error complained of by defendant.

The evidence of the state conclusively shows that the witness, Bettie Lou Reed, was sent by her grandmother to secure the whisky for her personal use from the defendant; that she revealed this fact to him; and that the grandmother furnished the money for the purchase of the liquor, and that the grandmother drank liquor, and that the witness, Bettie Lou Reed, in no way consumed any of the liquor, but delivered it to her grandmother in the original package. The question to be decided is, Do these facts, as above outlined, constitute under the law a sale to Betty Lou Reed, a nine-year-old minor, or to her grandmother? If to the minor, as charged in the information in this case, then under our statute it is a felony. If it was a sale to the grandmother, then it was a misdemeanor and therefore triable in the county court, and the district court had no jurisdiction of this case. This exact question is presented to this court for the first time, and we consider it of the utmost importance. The reason for its importance is that should it be held that under the law it was not a sale to the minor, then the law should be construed so that a subterfuge could not be resorted to by those attempting to deliver liquor to a minor. We have examined many opinions and the leading text-books upon this question, and from our examin-

ation of the same what at first seemed to be a disputed question seems to be unanimously settled law. The conflict seemingly depends upon the language of the different statutes that are construed. All of the authorities hold the general rule to be as laid down by Black on Intoxicating Liquors, § 420, p. 492, where it is said:

"When a minor purchases liquor, not for his own consumption, but for the use of another person, as whose agent or messenger he is acting, and to whom the sale might lawfully be made, the guilt or innocence of the seller will depend upon the disclosure to the seller of the fact of agency, because, so far as concerns the seller, that will determine the person who is to fill the character of purchaser. If the minor informs the liquor-dealer that the liquor purchased is for the use of another person, who has sent him to buy it, and with whose money he pays for it, such being in truth the case; or if the dealer knows, from other sources of information, that the real purchaser is an adult and the minor is only his messenger; then the sale takes place between the dealer and the adult, the minor is not concerned in it except as the conduit by which the money is conveyed to the one and the liquor to the other, and consequently the dealer cannot be convicted of selling to the minor. To 'sell' liquor to a minor is what is forbidden by the statute. Merely to deliver liquor to a minor, with notice that it is to be carried to an adult, is not a sale, within the meaning of the statute. We cannot extend the terms of a criminal statute beyond its clear legal meaning. We cannot construe the word 'sell' in the statute to mean something different from its ordinary legal import. Undoubtedly, a minor may be an agent or lawfully go on errands for an adult, and a person may buy through an agent, and in such case, there being no question of the fact of agency, although the dealing is with the agent, and the delivery is to him, in legal effect, the sale is to the principal. The law is, that where a person contracts as agent, or he is known to be such, the contract is with the principal, and not with the agent; but where the

agent deals in his own name, and the principal is not disclosed or known, the contract is with the agent, and he is liable. Hence, for example, the seller should be allowed to show that the liquor was drawn and delivered to the minor in pursuance of an agreement between his parent and the defendant, on the previous day, for its purchase and subsequent delivery to the minor.

"But, on the other hand, as between a seller and an agent, who deals with him without disclosing the fact that he acts as agent, the latter, as well as the principal, may be regarded as the purchaser. A liquor seller who contracts with a minor may therefore be convicted of selling liquor to a minor, notwithstanding the fact may subsequently be disclosed that the minor acted as agent for an adult. In other words, if the seller has no notice or knowledge, either from the statements of the minor, from a previous course of dealing, or from other sources, that the minor is making the purchase for any one but himself, so that, for all the seller knows to the contrary, he is selling liquor to a minor for the latter's own use, he is guilty of the statutory offense, although, in point of fact, the minor was acting as agent or messenger for another.

"In some of the states, the statutes are so framed as to render unlawful the delivery of liquor to a minor, even when he acts merely in the behalf of a disclosed principal. Thus, in Massachusetts, under a law which provides that 'no sale or delivery of liquor shall be made in the premises described in the license * * * to a minor, either for his own use, the use of his parent, or of any other person,' it is held that a complaint, alleging a sale to a minor, may be sustained by evidence of a sale to a minor for the use of an adult, although the fact of its being for such adult's use was disclosed at the time of the sale, and the minor was merely a messenger sent for the liquor."

The Massachusetts statute, as above set forth, is one of those upon which the exception is based. It does

not permit the "sale" or "delivery" to a "minor, either for his own use, the use of his parent, or of any other person." No such provision appears in the Oklahoma Statutes. Under the general rule, as above stated, it should be understood that where liquor is delivered to a minor, and it is not revealed to the seller that it is being bought for an adult, the seller is guilty. If the liquor is delivered and consumed by the minor, the seller is guilty. In other words, the seller assumes the responsibility, and we hold that it is only where it is clearly shown that the minor is a messenger for the buyer, and this fact is revealed to the seller, and the liquor was in fact for the buyer, and the money was actually furnished for the payment of the same by the buyer, and there is no subterfuge, is the seller not guilty. If the facts show that the minor purchased the liquor for himself, or if he actually used the liquor himself or delivered it to some one other than the one for whom it was purchased, the seller would be held responsible, for the reason that he assumes this responsibility in dealing with the minor. The mere fact that the minor informs the seller that he is buying it for the use of another does not relieve the seller of the responsibility if his statements are not true. The rule above stated is followed in Woollen and Thornton on the Laws of Intoxicating Liquors, volume 2, § 725, p. 1227:

"However, the majority of the cases hold that a sale to a minor as the agent of a disclosed principal, known so to the vendor, is not a violation of a statute preventing sales to a minor, for the sale is, in law, to the principal, although thereby the liquor is placed within the physical control of the person from whom it was the intent of the statute to keep it. Such a sale does not require a written order of the parent where sales can

only be made to a minor upon such an order. In making the sale to the minor for another the vendor takes the risk that the representations of the minor are true, and if they be false he has committed the offense of selling liquor to a minor. In speaking of a sale to a minor as the agent of another, the Supreme Court of Mississippi has said: 'To sell liquor to a minor is what is forbidden by the statute. Merely to deliver liquor to a minor, with notice that it is to be carried to an adult, is not a sale, within the meaning of the statute. We cannot extend the terms of a criminal statute beyond its clear legal meaning. We cannot construe the word "sell" in the statute to mean something different from its ordinary legal import. Undoubtedly, a minor may be an agent or lawfully go on errands for an adult, and a person may buy through an agent, and in such case, there being no question of the fact of agency, although the dealing is with the agent, and the delivery is to him, in legal effect, the sale is to the principal. The law is that where a person contracts as agent, or he is known to be such, the contract is with the principal and not with the agent; but where the agent deals in his own name, and the principal is not disclosed or known, the contract is with the agent, and he is liable.' "

15 Ruling Case Law, § 127, p. 363, lays down the rule as follows: ·

"While, from the standpoint of the purpose of preventing the furnishing of liquor to minors for their own indulgence, the prohibition has been held not to apply to a minor sent by his father to buy for him, the question whether the agency was disclosed is usually made the test of criminal responsibility. It is uniformly held that such responsibility is not affected by the fact that the minor acted as agent or messenger for an adult, if the agency was unknown to the seller at the time of the sale, and the minor's mere statement that he is buying for another does not excuse the defendant, if the principa' was not named or otherwise specifically identified, for in such case the sale is made to the minor and not to the

undisclosed principal; conversely, the weight of authority supports the view that when the sale is made with knowledge that the liquor is for the use of a disclosed adult, the seller is not guilty of selling to a minor, inasmuch as the relation of vendor and vendee cannot, in such a case, exist between the seller and the minor; but some courts have refused to take this view, influenced possibly in some instances, by the particular phraseology of the statutes involved, as where the inhibition is against sales for the minor's own use or that of any other person. If it should turn out that the liquor was in fact purchased by the infant for himself notwithstanding any representations or appearances to the contrary, it would seem that the seller should be held responsible, in keeping with the rule that even where the sale is made on what purports to be the order of an adult, the dealer usually must assume the risk of the minor's conduct, and if the order turns out to be a fabrication or to have been forged, it does not serve to excuse the sale, this rule being as clearly defined as the view that where the statute requires a written order, neither a verbal order, nor one given by a person other than those authorized by the statute, constitutes a defense."

The Supreme Courts of many states have passed upon this question in cases where the facts were almost identical with the case at bar. The St. Louis Court of Appeals of Missouri, in the case of State v. Feldman, 150 Mo. App. 120, 129 S. W. 998, 999, says:

"Nor is it a defense to a prosecution for the violation of this and cognate statutes, that the father gave verbal consent (State v. Johnson, 44 Mo. App. 84); or that the minor bought as agent for an adult person, if he did not disclose the fact to the seller (State v. McLain, 49 Mo. App. 398); but if he did disclose it, the sale is to be taken as made to the principal and not to the minor."

The Court of Civil Appeals of Texas, in Laing v. State, 9 Tex. Civ. App. 136, 28 S. W. 1040, says:

"Where an adult who employed a minor sent him to defendant's saloon to buy some beer for him, and the minor so informed the saloon keeper, the sale was to the employer, and not to the minor."

The Supreme Court of Arkansas, in the case of Wallace v. State, 54 Ark. 542, 16 S. W. 571, says:

"The question in this case is, Was the statute violated by simply delivering liquor to a minor who was known to be doing an errand for another? The prohibition of the statute is against the sale or giving away of liquor to a minor (Act Ark., April 6, 1889, p. 122), and, unless the act complained of amounts to a sale or giving away of liquor to the minor, it is not a violation of the law. 'To deliver liquor to a minor for the use of the parent is not to sell it to the minor,' says Mr. Bishop. (St. Crimes, § 1021.) The quotation is the statement of an obvious rule of law, when the liquor is delivered for the known purpose of the parent's or another's use, for then no relation of vendor and vendee can be said to exist between the minor and the liquor seller; and, to deliver liquor to one merely to be carried by him to another, is not to 'give away' liquor to the one who bears it. We cannot construe the term 'give away' in a penal statute to mean something different from its ordinary legal and commonly accepted import. Ward v. State, 45 Ark. 351; Gillan v. State, 47 Ark. 555, 2 S. W. 185. However defective the law may be thought to be, it is not the province of the courts to extend it so as to cover cases not within its terms, as would be done if we should construe the term 'give away' to cover the case stated."

The Supreme Court of Nebraska, in the case of In re MacRae, 75 Neb. 757, 106 N. W. 1020, 1021, 121 Am. St. Rep. 829, says:

"This doctrine seems to be sustained by Commonwealth v. Lattinville, 120 Mass. 385; O'Connell v. O'Leary, 145 Mass. 311, 14 N. E. 143; State v. McMahon, 53 Conn. 407, 5 A. 596, 55 Am. Rep. 140; State v. Walker, 103 N. C.

413, 9 S. E. 582; Monaghan v. State, 66 Miss. 513, 6 So. 241, 4 L. R. A. 800; Wallace v. State [54 Ark. 542] 16 S. W. 571, and Randall v. State, 14 Ohio St. 435. In Monaghan v. State, supra, it was said: 'To "sell" liquor to a minor is what is forbidden by the statute. Merely to deliver liquor to a minor, with notice that it is to be carried to an adult, is not a sale within the meaning of the statute. We can not extend the terms of a criminal statute beyond its clear legal meaning. We can not construe the word "sell" in the statute to mean something different from its ordinary legal import. Undoubtedly, a minor may be an agent or lawfully go on errands for an adult, and a person may buy through an agent, and in such a case, there being no question of the fact of agency, although the dealing is with the agent and the delivery is to him, in legal effect the sale is to the principal. The law is that where a person contracts as agent, or he is known to be such, the contract is with the principal, and not with the agent; but where the agent deals in his own name, and the principal is not disclosed or known, the contract is with the agent and he is liable.' "

The Supreme Court of West Virginia, in the case of State v. McNeal, 66 W. Va. 411, 66 S. E. 512, 25 L. R. A., N. S., 178, 135 Am. St. Rep. 1038, upholds the same doctrine.

In Harley v. State, 127 Ga. 308, 56 S. E. 452, the Supreme Court of Georgia held that when one delivers intoxicating liquors to a minor, and the undisputed evidence showed that the minor was in good faith acting as the agent of a named person, who furnished the money therefor, and the minor actually carried and delivered the liquor to such third person, without consuming or parting with any of it on the way, the sale was to the principal, and the seller was not guilty of selling or furnishing liquor to the minor.

In Short v. People, 96 Ill. App. 638, the Appellate Court of Illinois has held that when a number of men together contributed a sum of money for the purchase of beer, and, at their request and upon their written order, a boy procured the beer from the accused and carried it to the men, and there was no evidence that the boy drank any of the beer or had any interest therein; it was held that the boy was a mere carrier for hire, and that, for the sale to him, as agent for the men, there could be no conviction.

See, also, McElwee v. State, 73 Tex. Cr. R. 445, 165 S. W. 927.

The statute under which the defendant was prosecuted, Oklahoma Statutes 1931, § 2622, Okla. St. Ann., tit. 37, § 5, p. 527, is as follows:

"It shall be unlawful for any person to barter, sell or give to any minor, person of unsound mind, or habitual drunkard, any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; or any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except."

This statute became effective March 8, 1913. Subsequent to that time the law has been amended so that beer containing a percentage of alcohol of 3.2 per cent. may be legally sold in this state. It is universally known that it is sold at many places, including grocery stores, where other commodities are sold. To construe the above statute as it was construed by the court in this case, in the giving of instruction No. 6, parents who send their minor child to the grocery store or other place as their messenger to secure beer, which contains a percentage of

3.2 alcohol, which is a greater percentage than that specified in the above statute, then the party delivering the beer to the minor to deliver to its parent would be guilty of violating this statute by selling to a minor. We do not think any such construction should be placed upon the statute, nor is it justified under the law.

If the facts in this case showed that the minor, Bettie Lou Reed, age nine years, had in any way used this liquor for herself, or had she failed to disclose for whom it was being secured, or if there had been any subterfuge practiced in any way, we would not hesitate to affirm this decision, under proper instructions of the court, but under the facts proven by the state, it is conclusively shown that her grandmother was sick, and gave her the bottle and money with instructions to go as her messenger and procure the whisky from the defendant; that she immediately revealed to the defendant that her grandmother had sent her for the whisky; and the same was immediately returned by her to the grandmother unmolested. Under the law, this sale was to the grandmother and not to the minor. Under the law, the sale to the grandmother was a violation of the laws of this state, and in this case the defendant should have been charged with the sale to the grandmother. No doubt from the evidence introduced, the defendant was engaged in the unlawful sale of liquor. He should be punished, but this punishment should be brought about in the manner prescribed by law. The enactment of the statute was to forbid the "barter, sale or giving away of liquor to a minor," and a different interpretation as applied to the facts in this case would be beyond its plain terms. Our statute does not use the word "furnish" as do some of the statutes of different states, but the terms used are "barter," "sell," and "give away." Rhodes v. State, 30 Okla. Cr. 2, 234 Pac. 645.

The jury found the defendant guilty, and, failing to agree upon the punishment, it was left to the court, who assessed a fine of $300 and a jail sentence of 90 days. If the information had charged the sale to the grandmother and the case had been tried in the county court, and the defendant found guilty, a fine of not to exceed $500 and imprisonment for six months in jail could have been imposed. It will thus be seen that the defendant could have been adequately punished had he been charged with the sale to the grandmother.

From what has been stated it follows that the court erred in giving instruction No. 6, to which the defendant excepted. This instruction did not present the issue of whether the liquor was purchased by the grandmother, but assumed that defendant was guilty if the delivery was made to the minor and the money paid by her to the defendant, regardless of the fact that the minor acted as agent for her grandmother in the purchase of the same. It therefore becomes unnecessary to pass upon other errors assigned, as they will not arise in another trial in the county court. The judgment of the district court of Oklahoma county is reversed.

DAVENPORT, P. J., and DOYLE, J., concur.