**Billie Roger MILLER, and Janet M. Sanders, a/k/a Miller, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–466.**

Court of Criminal Appeals of Oklahoma.

Jan. 12, 1977.

Rehearing Denied March 3, 1977.

Don Anderson, Public Defender, Oklahoma County, for appellants.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellants, Billie Roger Miller and Janet M. Sanders, also known as Janet M. Miller, hereinafter referred to as defendants, were conjointly charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–75–768, for the offense of Murder in the First Degree, in violation of 21 O.S. Supp.1973, § 701.1(2). The jury as mandated by the statute returned a verdict fixing the defendants' punishment at death by electrocution to be carried out on August 26, 1976. This Court indefinitely stayed the execution of sentence on August 19, 1975. From these judgments and sentences an appeal has been filed with this Court.

Louise Bensen, night clerk of the Time Store, a convenience store located at 100 S. Douglas Boulevard, Midwest City, relieved Teena Barrett, the afternoon clerk, around midnight on February 24, 1975. Barrett left the store, returned around 1:30 a. m., and left again. She went to her apartment, made some pancakes for herself and Bensen, and returned to the store. After the two women finished eating, defendant Miller entered the store sometime between 2:00 and 2:30 a. m., got a soft drink, chatted briefly with the two women, and then left the store. Around 3:00 a. m. Teena Barrett also left.

At approximately 3:30 a. m. on February 24, Lloyd Prior and Harold Clark arrived at the store. Clark went inside and found Bensen lying in a pool of blood behind the counter. After making a quick examination of the woman and deciding that she was dead, Clark went outside and told Prior what he had found. Clark went to the house next to the store and asked the people inside, Mr. and Mrs. Jackie White, to call the police. The Whites did not have a telephone, but they accompanied Clark back to the store where White called the police. Within seconds, several police cars arrived. An officer with a shotgun ordered Clark, Prior and the Whites from the store. They were searched and questioned by police.

At trial, Clark, White and several police officers described the scene of the homicide as follows: Louise Bensen was lying on her back in a puddle of blood behind the counter. Her face was covered with blood. The cash register drawer was open. Inside the drawer were some coins, but no bills. The top compartment of a two-compartment safe was open and empty. Near Bensen's body were four shell casings from a .25 caliber automatic pistol. Latent fingerprints taken at the scene were illegible. A subsequent audit of money in the second compartment of the floor safe showed that between $100.00 and $150.00 was missing from the store.

Dr. A. J. Chapman, State Medical Examiner, performed an autopsy on the victim's body. He found gunpowder burns on her face and five gunshot wounds to the head, from which he removed three bullets. The wounds were the cause of death in Dr. Chapman's opinion. Ray Lambert, the State Firearms Examiner, identified the bullets taken in the autopsy and the shell casings as coming from a .25 caliber automatic pistol. In his opinion, a .25 caliber pistol would have to be fired from a distance of less than three feet to leave gunpowder burns on the victim.

Several witnesses at the trial identified various photographs of the crime scene. The trial court admitted some of the photographs, including one showing the victim and her wounds, but excluded others.

Joyce Collins, manager of the Time Store, testified that she was engaged to defendant

Miller, who spent most of the weekend prior to the robbery-murder at her house near the store. On several occasions defendant Miller had shown her a small square-type handgun, but she was unable to state what type of gun it was. She said that defendant Miller had persuaded her not to make a weekend deposit of the store's funds. She also said defendant Miller had told her that he had lost his job the preceding Friday and was leaving for Dallas to look for work on the day of the robbery-murder.

Detective Eddie Thomason, who investigated the murder and talked with both defendants, testified during an in camera hearing as to the circumstances leading up to confessions written and signed by each of the defendants. The testimony established that the defendants came in separately to talk with the police, were advised of their rights with verbal and written Miranda warnings and waived those rights before signing the confessions. The trial court admitted the confessions after finding that they were made knowingly, intelligently and voluntarily.

Testimony showed that defendant Miller was married to an Ann Miller but was living with co-defendant Sanders, whom he called his "common-law" wife. The confessions established that he told Sanders shortly before the robbery-murder that he planned to rob the store. She begged him to allow her to go along and drove him to the store in her car. They saw some people in the store and drove around the block several times. Finally, they parked beside the store and defendant Miller went inside to see why Teena Barrett, whom he knew, was still there. He returned in a few minutes and they resumed driving around until they were sure that Bensen was alone inside the store. Defendant Miller went inside. According to his confession, he remembers only talking to Bensen and then she was lying on the floor with blood on her face. When he returned to the car and told co-defendant Sanders that he had shot Bensen, co-defendant Sanders was shocked. They drove back to her residence, packed some clothes and drove to Dallas, Texas, in his car. They spent the night with relatives of the defendant and then began the return trip to Oklahoma City. Along the way they stopped and saw in a newspaper that they were being sought for questioning in connection with the robbery-murder. Defendant Miller telephoned the Midwest City police and was informed that they would like to talk with him. As they drove to Oklahoma City, defendant Miller disposed of a gun in a lake near the Gene Autry exit of Interstate Highway 35, and co-defendant Sanders disposed of some money in a trash can on a street in Pauls Valley, Oklahoma. The money was recovered by the Pauls Valley police and introduced at trial. The pistol was not found.

Neither defendant called any witnesses nor testified in his own behalf.

█ The first assignment of error is that the confessions were inadmissible because the defendants were tried conjointly and neither took the stand so that the statements in one confession could be challenged by the other defendant. In support of this contention this Court is cited to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The holding this Court laid down in *Gregor v. State*, Okl.Cr., 505 P.2d 519 (1973), applies to this case. In *Gregor*, the defendants each admitted taking part in a robbery, and signed confessions which were identical for the most part. The confessions were introduced at trial and neither defendant took the stand. In upholding that conviction, this Court said:

"This Court does not see how the appellants can seriously contend that the statements of a co-defendant can prejudice one who has already admitted his participation in a criminal act. It is difficult to see how the corroboration that grows out of one confession and affects another can further prejudice the position of one who has already freely and voluntarily confessed his own guilt." 505 P.2d at 522–523.

This Court also notes, as it did in *Gregor v. State, supra*, that the United States Supreme Court in *Schneble v. Florida*, 405

U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), upheld the admission, at a joint murder trial in which neither defendant takes the stand, of testimony by one defendant concerning a co-defendant in the commission of the crime is harmless error beyond a reasonable doubt as to the co-defendant where the co-defendant's own confession was detailed and completely consistent with the objective evidence and not contradicted by any other evidence in the case.

Since the situation presented in the case at bar is nearly identical to those presented in *Gregor* and *Schneble*, we find this argument to be without merit.

■ The final assignment of error is a challenge to the constitutionality of 21 O.S. Supp.1973, § 701.1(2), and seeks a modification of the death sentence to life imprisonment. In light of this Court's holding in *Riggs v. Branch*, Okl.Cr., 554 P.2d 823 (1976), rendered after the United States Supreme Court struck down punishment by death, the sentences of the two defendants are hereby ordered modified to life imprisonment.

For all the above and foregoing reasons, the judgments and sentences appealed from are, accordingly, *AFFIRMED* as *MODIFIED*.

BRETT, P. J., concurs in part, dissents in part.

BUSSEY, concurs.

BRETT, Presiding Judge, concurring in part and dissenting in part:

While I concur in the affirmance of the conviction of Billie Roger Miller, I must dissent to the affirmance of the conviction of his co-defendant, Janet M. Sanders, for the reason that the evidence is entirely insufficient to support her conviction of the crime of Murder in the First Degree.

To understand why this is so one must understand the radical change in the Oklahoma law of felony murder which was brought about when the Oklahoma Legislature in 1973 enacted 21 O.S., § 701.1, defining murder in the first degree which it made punishable by mandatory death.

Under that statute's predecessor, Section 701, which had since territorial times defined murder in Oklahoma, the existence of a design to effect death was not · an element of the crime of felony murder. The mens rea requirement of that crime was satisfied by the intent to commit the underlying felony which resulted in the death of the person killed. Since in a case under that statute it was not necessary that the person who committed the actual act of killing have a design to effect death, it was not necessary that his accomplices in the underlying felony have a design to effect death. See, e. g., *Cornell v. State*, 91 Okl.Cr. 175, 217 P.2d 528 (1950).

This rule changed, however, when the Legislature in 1973 enacted Section 701.1, now repealed. To constitute the crime of murder in the first degree under that statute it was no longer sufficient that the killing occurred during the commission of a felony; the accused must also have had the design to effect death, that is, a specific intent to kill. See, *Provo v. State*, Okl.Cr., 549 P.2d 354, 356 (1976). If it be required that there be a showing that the actor in the killing had a specific design to kill during the felony, it clearly follows that there must be a showing from which the jury could infer that his accomplice shared that specific intent to kill. Not only is the record in this case devoid of such evidence against Janet Sanders, such evidence as there is concerning her knowledge and intent is entirely to the contrary.

Janet Sanders' counsel on appeal did not bring this issue to the attention of the Court. I, nonetheless, consider it so fundamental that it cannot be ignored.

I would reverse the conviction of Janet Sanders for the crime of murder in the first degree with instructions to dismiss unless the State of Oklahoma be prepared on retrial to present additional evidence concerning her intent to kill.