2004 OK CR 18

**John William MALASKE, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2002–1085.**

Court of Criminal Appeals of Oklahoma.

April 21, 2004.

Todd Burlie, Ponca City, OK, counsel for appellant at trial.

Brian Surber, Assistant District Attorney, Newkirk, OK, counsel for the State at trial.

Lee Ann Jones Peters, Norman, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Nancy E. Connally, Assistant Attorney General, Oklahoma City, OK, counsel for the State on appeal.

## OPINION

LUMPKIN, Judge.

¶1 Appellant, John William Malaske, was tried by jury in the District Court of Kay County, Case Number CF–2001–221, and convicted of Second Degree (Felony) Murder, in violation of 21 O.S.1991, § 701.8(2). The jury set punishment at ten (10) years imprisonment, and the trial judge sentenced Appellant accordingly. Appellant now appeals his conviction and sentence.

¶2 Appellant raises the following propositions of error in this appeal:

I. The trial court erred in overruling Appellant's motion to quash the information because the facts alleged did not constitute the crime of second-degree felony murder. Additionally, the evidence presented was insufficient to support a conviction for second-degree felony murder;

II. Instruction number 2, the homicide causation instruction, was extremely misleading, especially in light of the prosecutor's argument. A reasonable jury could have interpreted the instruction as allowing conviction of second degree felony murder under a proximate cause theory, contrary to Oklahoma statutory and case law;

III. The prosecutor's closing argument improperly misled the jury about the law, shifted the burden of proof to the defendants, and commented on Appellant's failure to testify;

IV. Detective Marshall's improper comment on Appellant's post-arrest invocation of his rights to counsel and to remain silent violated Appellant's constitutional rights and requires a new trial;

V. Appellant was denied a fair trial by the introduction of irrelevant evidence and evidence of prior crimes, which the prosecutor repeatedly emphasized throughout closing argument;

VI. The trial court committed fundamental error in failing to give Oklahoma uniform jury instruction CR–10–27, as recently revised; and

VII. The trial errors cumulatively deprived Appellant of a fair trial and reliable verdict.

¶3 After thoroughly considering these propositions and the entire record before us, including the original record, transcripts, and briefs of the parties, we find reversal or modification is not required.

██ ¶4 With respect to propositions one and two, we find the crime of furnishing alcohol to a minor is a felony that is "potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide." *Wade v. State,* 1978 OK CR 77, 581 P.2d 914, 916; 37 O.S.2001, § 538(F). In so finding, we observe that our state legislature, by making the furnishing of alcoholic beverages to persons under the age of twenty-one a felony punishable by up to five years in prison, has made "alcoholic beverage" a controlled substance and persons under twenty-one years of age a protected class. Thus, it can be fairly said that in Oklahoma, the proscribed felony is "inherently dangerous as determined by the elements of the offense." *Wade,* 581 P.2d at 916. Therefore, under the facts of this case,[1] Appellant can be said to have perpetrated the homicide of Dena Emery, while he was engaged in the commission of a continuing felony.[2] 21 O.S.2001, § 691; 21 O.S.2001, § 701.8(2).

██ ¶5 While our cases have, perhaps, used proximate cause terminology a bit

---

1. While Appellant was not actually present when the alcohol was consumed, he and his co-defendant purchased a bottle of vodka and provided it to his underage sister, knowing her intention to share it with her overnight guests, both of whom were also underage. For purposes of the felony murder statutes, these actions are sufficient for a conviction when one of the girls drank excessive amounts of that alcohol and died of blood alcohol poisoning.

2. The danger the legislature obviously intended to protect against was the consumption of that alcohol by persons who are not old enough to

loosely over the years,[3] our overall case law requires a nexus between the underlying felony and the victim's death in order for the felony murder doctrine to be applicable. *Wade* specifically warned "there must be a nexus between the underlying felony and the death of the victim. The felony must be inherently or potentially dangerous to human life, inherently dangerous as determined by the elements of the offense or potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide." 581 P.2d at 916.

¶ 6 Moreover, *Franks, supra*, cited to *Wade's* nexus language with approval. 636 P.2d at 364–65. *See also Lampkin v. State*, 1991 OK CR 33, 808 P.2d 694, 695 ("It is true that there must be a nexus between the underlying felony and the death of the victim in order for the felony-murder doctrine to apply."); *Diaz v. State*, 1986 OK CR 167, 728 P.2d 503, 509 (finding a nexus between the death and the underlying felony); *Irvin v. State*, 1980 OK CR 70, 617 P.2d 588, 597 (nexus recognized). This is the approach taken by OUJI–CR 2d 4–60, which requires

the defendant's conduct to be a "substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life." We find this instruction was appropriately given in this case, an accurate description of Oklahoma law as it currently stands, and not confusing, given Appellant's defense. Accordingly, we deny relief with respect to propositions one and two.

■ ¶ 7 With respect to proposition three, we find the prosecutor made a series of improper and potentially prejudicial arguments during his closing.[4] In addition to misstating the applicable law on several occasions, the prosecutor challenged defense counsel to answer a series of questions regarding the trial evidence. For example, the prosecutor told defense counsel to "address these questions, yes or no; not any kind of sidestepping answers, but direct answers, just like the witnesses give on the stand. Yes or no." The prosecutor then asked defense counsel: did Appellant give vodka to 8th graders; did Appellant commit a felony by doing so; did Dena Emery chug the vodka; did Dena die of alcohol poisoning.[5]

make good decisions regarding it, not just the receiving of it. In other words, the legislature has decided to protect anyone under the age of twenty-one from the dangers associated with consuming alcohol. Thus, the act of delivering alcohol to one in the protected class can fairly be considered a continuing illegal act, for alcohol is dangerous when it is consumed to excess. That this is a continuing act is especially true here since Appellant knew his sister and her underage friends intended to consume the vodka and immediately left to do so upon receiving the bottle. It would simply be too strict an interpretation to say that the felony was completed upon delivery and that felony murder was therefore not possible. Indeed, the act of distributing or dispensing CDS or trafficking in illegal drugs may serve as predicate crimes for first-degree felony murder. Similar to the facts of this case, the act of distributing CDS is also complete when the drugs are delivered, but that does not avoid criminal responsibility for felony murder.

3. *See State v. Jones*, 1993 OK CR 36, 859 P.2d 514, 515 (recognizing proximate cause theory but refusing to adopt it, instead following the "explicit" language of second-degree murder statute and first degree murder statute at that time); *Franks v. State*, 1981 OK CR 138, 636 P.2d 361, 365, *cert. denied*, 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982) (finding the primary issue was whether the commission of the predicate crime was the proximate cause of

the homicide); *State v. McCoy*, 1979 OK CR 125, 602 P.2d 1044, 1045 (recognizing proximate cause is applicable to felony murder cases); *Wade*, 581 P.2d at 915–16 (finding the State is *not* required to prove that the felony perpetrated by the defendant is the proximate cause of the victim's death in order to establish the crime of Murder); *State v. McCann*, 1995 OK CR 70, 907 P.2d 239, 241 (describing that second degree felony murder occurs when a person engages in the commission of any felony other than the enumerated first-degree felonies "which results in death.") *See also Palmer v. State*, 1994 OK CR 16, 871 P.2d 429, overruled on other grounds in *Willingham v. State*, 1997 OK CR 62, 947 P.2d 1074.

4. See also, proposition five.

5. These were only a few of the questions posed to defense counsel. The prosecutor also asked: "Mr. Burlie, are you telling us that if a drug dealer gives someone heroin, if they don't die instantly, they have no responsibility for her death?"; "Mr. Burlie, can you tell us why you can even ask us to consider that, when the Instructions say we have to base our decision on evidence....";  "Can you please tell us why you didn't send your investigator out there to bring those witnesses in and what conclusions we should draw from that?" The prosecutor asked for straight answers to his questions and said he would give the list to defense counsel so he could

¶ 8 The clear implication here was that defense counsel, at all times Appellant's representative, had a duty to answer these questions, and if he did not Appellant was sandbagging, not taking responsibility, hiding the ball. To some extent, the prosecutor was taking a hard look at the evidence, but such a confrontational bullying approach arguably begins to shift the burden of proof. Also, as Appellant further claims, such argument is at least an indirect comment on Appellant's constitutional right to remain silent. *See United States v. Skandier*, 758 F.2d 43, 44–45 (1st Cir.1985)(addressing how such questioning can result in burden shifting and comment improperly on the right to remain silent).

¶ 9 In this case, defense counsel did not initially object to the questions, as he could have done, and thereby denied the trial court the opportunity to cure the error. However, there is no indication the trial court would have ruled in his favor, for counsel did ultimately object, and the trial court ruled this was not improper argument.[6] We disagree.

¶ 10 Regarding the portions of this argument to which defense counsel did not object, we find no plain error occurred; although this is, at least arguably, a close question. *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690, 693. We find, however, that the trial court erred by overruling defense counsel's objection once it was made and by allowing the prosecutor to continue this line of improper argument. Moreover, we find the error was harmless beyond a reasonable doubt. *Simpson*, 876 P.2d at 705. Defense counsel explained to jurors that he had no duty to answer the prosecutor's questions, that the State had the burden of proof. Later, the trial judge told jurors that argument was not evidence. Also, jurors received proper instructions on the burden of proof, the presumption of innocence, Appellant's right not to testify, and that their decision had to be based upon evidence. Jurors were

also instructed that "[n]o statement or argument of the attorneys is evidence." And finally, the improper questions posed by the prosecutor really were, for the most part, obvious from the evidence presented at trial.

■ ¶ 11 With respect to proposition four, we find the trial judge did not abuse his discretion by overruling defense counsel's motion for mistrial concerning Detective Marshall's comments. *Knighton v. State*, 1996 OK CR 2, 912 P.2d 878, 894. Although the comments were improper, they sprang forth from somewhat careless questioning, primarily by counsel for the co-defendant. However, both counsel had the opportunity to approach the bench when the first comment (to which Appellant does not raise error) occurred and have Detective Marshall warned against such comments. They chose not to. The jury was properly instructed that the defendants had no duty to testify and the fact that they did not testify could not be used against them in the "slightest degree," nor could it even enter into their deliberations. Thus, we find no plain error occurred.

¶ 12 With respect to proposition five, we find the trial judge did not abuse his discretion in allowing evidence to be admitted at trial concerning Appellant writing on Dena Emery while she was passed out.[7] *See Powell v. State*, 2000 OK CR 5, 995 P.2d 510, 527 (Court will not disturb a trial court's decision to admit evidence absent a clear abuse of discretion accompanied by prejudice). We further find no plain error occurred in the admission of testimony regarding the fact that Appellant had previously provided alcohol to his sister and her friend. Furthermore, this testimony came about as a result of questioning by defense counsel for both defendants.

¶ 13 We do, however, find the prosecutor made improper arguments concerning the

refer to them. He indicated the answers would be a series of "yeah, buts" that "don't mean a thing." He told Mr. Burlie "if you're going to call (her) a liar, be a man, stand up and say it."

6. The prosecutor then continued to challenge defense counsel to address his questions during his closing. Instead, defense counsel argued as follows in his own closing: "I'm not on trial in this case. Mr. Surber has tried to present ques-

tions to me, but, please understand, the burden is not on us; the burden is on the State in this case. They must prove guilt beyond a reasonable doubt.... I don't have to answer Mr. Surber's questions."

7. Photographs of the deceased showed the writings. Moreover, the evidence was somewhat relevant to the issue of culpable negligence in the lesser included manslaughter theory.

fact that Appellant had written on Dena Emery, essentially asking the jury to consider that fact as an aggravating circumstance worthy of stricter punishment. This argument was improper and a violation of the trial court's ruling with respect to Appellant's pretrial motion in *limine*. Standing alone, it is not entitled to any relief, however, especially when counsel failed to make a contemporaneous objection. We will, however, consider it as part of proposition seven, relating to cumulative error.

¶ 14 In proposition six, Appellant claims the trial court committed fundamental error by failing to give the revised version of OUJI–CR 2d 10–27, as it was revised in *Graham v. State*, 2001 OK CR 18, 27 P.3d 1026, 1028, n. 5. The previous version of the instruction was given, however, and this case is clearly distinguishable from *Graham*. Moreover, *Graham* was handed down on June .21, 2001, the very same day that jury instructions were given in this case. It appears doubtful that *Graham* was available to the parties at the time jury instructions were crafted, and there is no indication the new instruction was brought to the trial judge's attention. We find relief is not warranted.

¶ 15 Concerning proposition seven, we find the prosecutor made several improper closing arguments, as shown in propositions three and five above. (Most, however, were not objected to.) Also, the lead investigator commented on the right to remain silent, as a result of questioning by the co-defendant's counsel. In considering the effect, if any, these errors may have had on the jury's decision to choose between second-degree felony murder, second-degree manslaughter, and the underlying felony in the felony murder, we find the issue is a close call. However, after considering the jury instructions, the sentence imposed, and our decision with respect to propositions one and two, we find no relief is required.

## DECISION

¶ 16 The judgment and sentence are hereby **AFFIRMED**.

JOHNSON, P.J., and LILE, V.P.J., concur.

CHAPEL and STRUBHAR, JJ., dissent.

CHAPEL, J., dissenting:

¶ 1 I disagree with the majority's insistence on expanding the felony-murder doctrine past all recognizable bounds. In *Wade v. State* this Court noted that the purpose of the felony murder doctrine is "to relieve the prosecution of the necessity of proving [a defendant's] actual malice or premeditated intent"; the intent element of the underlying felony is transferred to the homicide "so that the accused can be found guilty of murder even though the killing is unintentional."[1] This definition suggests a policy which applies felony murder to punish a defendant more severely where a death occurs during a felony.[2] This ability to hold a person liable for murder, without regard for the defendant's intent or actual cause of death, should be used with great care. The imposition of liability for unintended deaths erodes the relationship between criminal liability and moral culpability.[3] The majority appears determined to further erode this relationship.

1. 1978 OK CR 77, 581 P.2d 914, 916. For a historical review of the changes in Anglo–Saxon law leading to the felony murder doctrine, see Michelle S. Simon, *Whose Crime Is It Anyway? Liability for the Lethal Acts Of Nonparticipants in the Felony*, 71 Univ. of Detroit Mercy L.Rev. 223, 225–28 (Winter 1994) [Simon] (in early English law, murder had no intent element; a malice element was gradually introduced for all murder charges until the enactment of felony murder statutes); *see also* Leslie G. Sachs, Casenote, *Due Process Concerns and the Requirement of a Strict Causal Relationship in Felony–Murder Cases: Conner v. Director of Division of Adult Corrections*, 23 Creighton Law Review 629, 634 (May 1990) [Sachs] (discussing *Lord Dacres' Case*, *Mansell & Herbert's Case*, and Coke's initial statement of the felony murder rule).

2. This has been described as "community condemnation". Simon, *supra* n. 1, at 228–230 (discussing this and other policies justifying felony murder doctrine, including deterrence). Sachs suggests the doctrine may be justified because, by committing a felony resulting in death, the defendant has demonstrated he is a bad person whose intent need not be determined. Sachs, *supra* N. 1 at 635 (citing LaFave & Scott, *Criminal Law* 545, 560 (1972)).

3. *People v. Dillon*, 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697, 709 (1983); Dana K. Cole, *Expanding Felony–Murder in Ohio: Felony–Murder or Murder Felony?* 63 Ohio State Law Journal 15, 22 (2002 Symposium) [Cole]; Simon, *supra* N. 1 at 224.

¶ 2 Our homicide statutes provide that second-degree felony murder is any murder perpetrated by a person engaged in any felony other than a felony enumerated in the first-degree felony murder statute.[4] *Wade v. State* explained that, to qualify as second-degree felony murder, a felony "must be inherently or potentially dangerous to human life, inherently dangerous as determined by the elements of the offense or potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide."[5] The majority relies on this to support its conclusions. However, *Wade* also provides the description of the purpose of the felony murder doctrine I quote above. When I consider this underlying purpose of felony murder, I cannot agree that finding liability for murder based on furnishing alcohol to a minor is an appropriate application of the doctrine.

¶ 3 Indisputably, there must be a nexus between the underlying felony and the victim's death.[6] The question is how we determine that link.[7] The two most common methods of finding causation are through agency theory or proximate cause. Rather than answer that question, the majority appears to refer to "nexus" as a replacement for causation—an option this Court has not before exercised.[8] As the cases cited by the majority suggest, in the past this Court has danced around adoption of the proximate cause theory, which requires that the death in question is foreseeable and proximately related to the commission of the felony.[9] However, in *Kinchion v. State* this Court used a version of proximate cause analysis to conclude that a defendant is liable for first degree felony murder when his accomplice is killed by their victim during the course of an armed robbery.[10] While *Kinchion* interpreted the first degree felony murder statute,

4. 21 O.S.2001, § 701.8.

5. 581 P.2d at 916.

6. *Id.*

7. Close reading of the majority opinion fails to reveal any analysis specifically applying any causation theory to the facts of this case. In footnote 1 the opinion states that Malaske's actions in buying vodka and giving it to his sister, knowing she would share it, were sufficient for conviction under the felony-murder statute. The entire discussion of the importance of a nexus between the death and the offense consists of quotes from cases agreeing there must be such a nexus.

8. *Wade* stated that, if causation is proved by a nexus between the crime and the death, the State need not prove the crime was the proximate cause of the death. 581 P.2d at 516. However, the opinion used causation analysis in determining that the evidence was sufficient. *Wade's* entire discussion of proximate cause and the facts of the case suggest the opinion was narrowly interpreting the phrase "proximate cause", as the opinion appeared to use a "but-for" causation theory in finding that the victim's death would not have occurred if Wade had not been illegally carrying a loaded gun in a bar. *See* Simon, *supra* n. 1, at 244–45 (suggesting *Wade* used a "but-for" causation analysis).

9. See *State v. Jones*, 1993 OK CR 36, 859 P.2d 514, 515 n. 1, in which we discussed both theories of causation, declining under the terms of the felony murder statute to adopt the proximate cause theory to uphold a felony murder conviction where a victim shot an accomplice. This

decision led to the revision of the felony murder statute which was interpreted in *Kinchion v. State*, 2003 OK CR 28, 81 P.3d 681. A sampling of cases in which this Court has used, if not adopted, the proximate cause theory include *Sanders v. State*, 2002 OK CR 42, 60 P.3d 1048, 1051–52; *Baker v. State*, 1998 OK CR 46, 966 P.2d 797, 798; *State v. McCann*, 1995 OK CR 70, 907 P.2d 239, 241; *Franks v. State*, 1981 OK CR 138, 636 P.2d 361, 365 (equating "nexus" with proximate cause, and finding issue for felony murder was whether commission of the offense was the proximate cause of the death); *Irvin v. State*, 1980 OK CR 70, 617 P.2d 588, 597. *See also State v. McCoy*, 1979 OK CR 125, 602 P.2d 1044, 1045 (as in felony murder, misdemeanor manslaughter requires proof that misdemeanor was the proximate cause of death); *Miller v. State*, 1977 OK CR 14, 560 P.2d 579, 582–83 (Brett, J., dissenting in part) (tracing history of felony murder in Oklahoma and noting that mens rea requirement was satisfied by the intent to commit the felony which resulted in death).

10. 2003 OK CR 28, 81 P.3d 681, 684. The *Kinchion* analysis does not require that the death have been foreseeable in any meaningful sense, but holds a defendant strictly liable for any death which occurs at the time he commits a felony. I continue to disagree with the use of a causation theory, borrowed from civil law, which subjects a defendant to liability for murder without considering either the defendant's intent in committing the felony or the cause of death. *Kinchion*, 81 P.3d at 687 (Chapel, J., dissenting). I particularly disagree with the application of proximate cause without ensuring that the death was foreseeable as a result of the defendant's conduct.

there is no analytical difference in causation requirements for first and second degree murder.[11]

¶ 4 The majority concludes that the law prohibiting giving alcohol to a minor is an "inherently dangerous" offense. Malaske gave a bottle of vodka to his teenage sister, who shared it (along with other alcoholic beverages not provided by Malaske) with her underage friend. The friend died of alcohol poisoning. The majority determines that Malaske has committed second degree felony murder. Absolutely nothing in the statutory language of either the felony murder or furnishing alcohol to a minor statutes, or both taken together, suggest the Legislature intended such a stunningly broad result.

¶ 5 The key question here is whether the underlying felony, furnishing alcohol to a minor, can support a second degree felony murder charge. The law provides that any person who knowingly sells, provides or furnishes alcohol to a person under 21 is guilty of a felony punishable by a fine and imprisonment.[12] The majority finds that this statute makes alcoholic beverages a controlled substance, and puts minors into a protected class.[13] I agree with those conclusions but cannot read into them the significance the

majority assigns them. Under this statute, alcohol is "controlled" in the sense that its disposition is regulated. Alcohol is also regulated by limitations on its manufactured strength and the method of its sale to adults, and by prohibitions against driving, operating machinery, or misbehaving in public while under its influence. However, alcoholic beverages in themselves are not, under Oklahoma law, treated as dangerous. Within regulatory limits, it is legal to make, sell, own and consume alcoholic beverages. The Legislature has made a policy decision to control this substance not because it poses any inherent threat, but because its misuse can, as we see in this case, have tragic consequences. This is in keeping with other legislative decisions to control substances that are not, in themselves, threats to human life.[14]

¶ 6 The majority's conclusion that this felony is inherently dangerous "as determined by the elements of the offense" is explicitly based on the conclusion that minors are a protected class. However, this justification has harsh consequences. The decision also extends liability for murder to bartenders and convenience store clerks who sell alcohol to a minor, if that minor then shares the

11. Interestingly, the majority does not cite *Kinchion* in its discussion interpreting causation for felony murder. However, that opinion, coupled with the language about proximate cause and nexus theory, suggests that, had the majority wished to engage in any causation analysis here, it would have used a proximate cause theory. See slip op. at 3, n. 3.

12. 37 O.S.2001, § 538(F).

13. Very few published cases have been decided under this statute. Interestingly, two of them hold that it is *not* illegal to sell alcohol to a minor when the minor is clearly acting as a messenger for an adult buyer. *State v. Williams*, 1957 OK CR 14, 307 P.2d 163 (1957) (teenage newspaper interns sent out to buy alcohol); *Leathers v. State*, 63 Okl.Cr. 220, 74 P.2d 967, 972–73 (1937) (sale of whisky to nine-year-old acting for grandmother not illegal). The 1937 version of the statute prohibited the barter, sale or gift of alcoholic beverages to a minor. I do not suggest this Court would reach the same conclusion under the similar language of the current statute, but it does indicate the limits of this Court's previous interpretation of the legislative intent to create a protected class of minors.

14. One recent example is the recently passed law controlling the sale of pseudoephedrine in pill form. This law was enacted in an effort to hinder the manufacture of methamphetamine; one common ingredient in methamphetamine is pseudoephedrine distilled from over-the-counter pills. This effectively makes pseudoephedrine a controlled substance. However, only the sale of the pill form is regulated because only the pills are used in methamphetamine manufacture. Gel and liquid pseudoephedrine sales are unrestricted. Pseudoephedrine itself is an effective remedy for all ages; in fact, it is one of the few drugs allowed during pregnancy. Thus pseudoephedrine is categorized as a controlled substance in order to further a larger drug eradication policy, not because the drug itself is dangerous. By contrast, look at the regulation surrounding tobacco products and firearms. While the 2004 State of the State's Health report reaffirms the concrete health dangers associated with the use—not misuse—of tobacco products, the State has repeatedly refused any opportunity to treat this substance as inherently dangerous, but has passed numerous regulations surrounding its legal manufacture, distribution, possession and use. Firearms are inherently dangerous but their manufacture, distribution, possession and use is legal subject to state regulation.

alcohol with another minor who drinks too much and dies (perhaps by alcohol poisoning, perhaps in an accident after driving under influence of the alcohol sold by the clerk). Fraternities and other organizations who provide alcohol at parties, and parents who give or supervise graduation parties, will be liable for murder if the alcohol they supply is shared with minors and a death results.[15]

¶ 7 According to the majority Malaske committed second degree felony murder when (a) he gave his teenage sister an alcoholic beverage, (b) she shared the alcohol with her underage friend, (c) the friend drank too much, and (d) the friend died. However, given the explicit premise on which this decision rests, Malaske could not be guilty of second degree felony murder if he had given vodka to his 22–year–old friend, who then shared the bottle with another adult who died of alcohol poisoning. That is, Malaske could have given the same controlled substance to another adult, and if an adult died after ingesting too much of that substance, it would be legal.

¶ 8 Perhaps recognizing this distinction, the majority suggests that the crime of furnishing alcohol to a minor is designed to protect people who cannot exercise good judgment in its use.[16] The majority compares this with "the act of distributing or dispensing CDS or trafficking in illegal drugs", which are predicate crimes for first-degree felony murder. The acronym "CDS", as used here, stands for illegal controlled dangerous substances.[17] That is, the majority is comparing the Legislature's regulation of alcohol—a legal substance—with its prohibition against manufacture, distribution, possession or use of illegal drugs. This suggestion shows either the majority's lack of perspective regarding the facts of this case, or its misunderstanding of the differing nature of various controlled substances. The issue regarding controlled dangerous substances is not one of exercising good judgment; the Legislature has enacted a flat prohibition against these inherently dangerous substances. Put another way, the CDS statutes presume that nobody, regardless of age, can exercise good judgment when illegal drugs are concerned. This is not the case with alcohol. "Trafficking" in large amounts of alcohol is legal and routinely done in the course of business by package stores and convenience stores across Oklahoma.

¶ 9 This opinion is an extension of the majority's decision in *Kinchion*. Both cases rest, finally, on the notion that where a death occurs, someone must be liable for murder. In *Kinchion*, the victim killed Kinchion's accomplice in self-defense. Here, a young woman died of alcohol poisoning. Felonies occurred near in time to both deaths: Kinchion and the accomplice were committing armed robbery, while Malaske illegally gave his sister vodka. Kinchion and Malaske should be punished for the crimes they committed. There can be no doubt about that. The majority here, however, are not content with that result, and have invented a way to ensure someone is punished for murder in both cases. This can only be described as the ultimate version of the extremists blame game. There are times when somebody dies and nobody can be liable for murder. This was a sad and senseless episode. Malaske, along with the persons present while the victim drank too much, passed out, and died, should regret every step of his part in it, and suffer the consequences for having commit-

---

**15.** The potential consequences of this decision are far-reaching. For example, under the reasoning of this case, a store clerk would be liable for a homicide if he provided tobacco to a minor who developed lung cancer and died after using the tobacco. Oklahoma has recognized the scientific and medical causal connection between tobacco use and lung cancer. Providing tobacco to a minor is a misdemeanor. 21 O.S.2001, § 1241. Misdemeanor manslaughter causation requirements are comparable to those for second degree felony murder. *State v. McCoy*, 1979 OK CR 125, 602 P.2d 1044, 1045. Following the majority decision, the Legislature has made tobacco a controlled substance and minors are a protected class, so a violation of the prohibition against providing tobacco to minors would support a misdemeanor manslaughter conviction.

**16.** Op. at 1117–18, n. 2. This suggestion would have more force if the Legislature had not, when modifying § 538(F), removed the earlier references to persons of unsound mind and habitual drunkards. 37 O.S.1931, § 5.

**17.** These include marijuana, cocaine and crack, heroin, amphetamine and methamphetamine, LSD, PCP, and "ecstasy" (MDMA). 63 O.S. 2001, § 2–415.

ted a felony. He should not be branded a murderer. I dissent.

STRUBHAR, J., dissenting.

¶ 1 I dissent. I find merit in Proposition III. The prosecutor, in his closing arguments, made a continuing series of improper arguments. The prosecutor's confrontational and bullying approach directed towards the defense attorney was not only inappropriate but absurd; however, when the defense counsel objected, the trial court improperly overruled the objection. Additionally, the prosecutor misstated the law on several significant occasions. These errors cannot be considered harmless. I would reverse and remand for a new trial.